**PEOPLE OF THE VIRGIN ISLANDS, Appellant/Plaintiff**
**v.**
**WILLIS TODMANN, Appellee/Defendant**

S. Ct. Crim. No. 2009-0052
Supreme Court of the Virgin Islands
February 19, 2010

DENISE GEORGE-COUNTS, ESQ., AAG, Dept. of Justice, St. Thomas, USVI, *Attorney for Appellant*.

TRESTON MOORE, ESQ., Moore, Dodson & Russell, P.C., St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*. SWAN, *Associate Justice, Affirming in Part, Dissenting in Part.*

## OPINION OF THE COURT

(February 19, 2010)

HODGE, C.J. Appellant, the People of the Virgin Islands ("the People"), challenges the Superior Court's interlocutory order granting the *Motion In Limine* to Exclude People's Expert Witness filed by Appellee, Willis Todmann ("Todmann"). For the reasons which follow, we will affirm the Superior Court's April 28, 2009 order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2004, Todmann was employed as the Chief Financial Officer ("CFO") for the Government Employees Retirement System ("GERS"). When the person serving as Administrator for GERS resigned, Todmann was appointed Acting Administrator while continuing to serve as CFO. Pursuant to a resolution of the Board of Trustees for GERS, Todmann, as Acting Administrator, was entitled to compensation in the amount of 15% of the Administrator's salary in addition to his regular salary as CFO. In an interoffice memorandum ("memo"), dated July 27, 2005, Todmann requested approval from Carver Farrow ("Farrow"), the chairman of the Board of Trustees, to receive the full Administrator's salary in addition to his regular CFO salary. The bottom portion of the memo contained a section denoting "approved/disapproved" and a signature block. Sometime thereafter, Todmann presented the memo to the GERS human resources department with the word "approved" circled and a signature and date purporting to be Farrow's. As a result, Todmann received the full Administrator's salary as well as the full CFO's salary until February 2007, when the matter was apparently discovered by GERS officials.

On November 21, 2009, the People filed an Information charging Todmann with twenty-six counts, including forgery pursuant to 14 V.I.C.

434

§ 791(2)[1] and embezzlement or falsification of public records pursuant to 14 V.I.C. § 1662(1).[2] During the discovery period, Todmann was notified that the People intended to call a handwriting expert employed by the United States Secret Service to testify at trial. After comparing several handwriting exemplars of Farrow and Todmann to the signature and date on the memo, the expert concluded in his report that Farrow "very probably did not write the questioned signature and date on [the memo]." (J.A. at 63.) Additionally, the expert concluded that Todmann "may have written the questioned signature and date on [the memo]; however, this finding is far from conclusive." (*Id.*)

On March 6, 2009, Todmann filed a *Motion In Limine* to Exclude People's Expert Witness, arguing that the expert's report "is not telling the jury anything that will assist them to understand the evidence or determine a fact in issue" because the expert's conclusion that Todmann may have signed the memo, which the expert deemed far from conclusive, "is far too speculative to be of any assistance to the jury, and will most likely mislead the jurors." (J.A. at 67, 69.) The People's March 23, 2009 opposition argued that the expert's findings are extremely relevant to the issue of whether Todmann knowingly submitted a forged memo, and that the expert's findings are not speculative because they are the result of a complete and detailed analysis. Todmann filed a reply to the People's opposition on April 8, 2009, reiterating that the expert's testimony cannot assist the jury as required by Federal Rule of Evidence 702. On April 28, 2009, the trial court granted Todmann's motion to exclude the expert's testimony.

The People timely filed a notice of appeal on May 22, 2009.

---

[1] "Whoever, with intent to defraud another . . . utters, publishes, passes, or attempts to pass, as true and genuine, any of the false, altered, forged or counterfeited matters, as above specified and described, knowing the same to be false, altered, forged or counterfeited . . . shall be fined not more than $2,000 or imprisoned not more than 10 years, or both." 14 V.I.C. § 791(2).

[2] "Whoever, being a public officer or person charged with the receipts, safekeeping, transfer or disbursement of public monies . . . appropriates the same, or any portion thereof to his own use or the use of another, without authority of law . . . shall be fined not more than ten thousand ($10,000) dollars or imprisoned not more than ten (10) years, or both, and shall be disqualified from holding any public office." 14 V.I.C. § 1662(1).

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

The Supreme Court has jurisdiction over the People's interlocutory appeal from the trial court's order excluding the handwriting expert's testimony pursuant to V.I. CODE ANN. tit. 4 § 33(d)(2), which provides that:

> An appeal by the Government ... shall lie to the Supreme Court from a decision or order of the Superior Court suppressing or excluding evidence ... in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict ....

In accordance with the statutory mandate that interlocutory appeals from such orders shall be determined promptly, we granted expedited review of this matter on June 5, 2009.

Our review of the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). However, we review the trial court's decision to admit or exclude expert testimony only for abuse of discretion. *Ritter v. People*, 51 V.I. 354, 358 (V.I. 2009). Similarly, the trial court's exclusion of evidence for prejudice is reviewed only for abuse of discretion. *See Mulley v. People*, 51 V.I. 404, 409 (V.I. 2009).

### B. The Trial Court Did Not Abuse its Discretion in Excluding the Testimony of the People's Handwriting Expert

The sole issue on appeal[3] is whether the trial court abused its discretion

---

[3] The People's notice of appeal purports to also appeal from an order of the trial court allowing Todmann to introduce statements of a deceased attorney to establish an advice of counsel defense. However, on June 16, 2009, this Court partially granted Todmann's motion to dismiss the People's appeal, because the People are not statutorily authorized to appeal from an order which permits a defendant to introduce evidence. As a consequence, and as the partial dissent points out, the People have advanced no argument for this issue. However, we do not reach this issue because it was dismissed by this Court, not because — as the partial dissent contends— the People did not advance any argument on this issue.

in excluding the testimony of the People's handwriting expert[4] that Todmann may have signed Farrow's name to the memo and that Farrow very probably did not sign the memo. It appears from the trial court's order that the court considered the handwriting expert's proffered testimony as two distinct pieces of evidence: (1) the expert's opinion that Todmann may have signed Farrow's name to the memo, which is "far from conclusive," and (2) the expert's opinion that Farrow very probably did not sign the memo. As the trial court gave different reasons for excluding each piece of testimony, we will address each portion of the proffered opinion testimony separately.

### 1. There Was No Abuse of Discretion in the Exclusion of the Inconclusive Testimony that Todmann May Have Signed Farrow's Name to the Memo

■ In excluding the expert's opinion testimony that Todmann may have signed Farrow's name to the memo, the trial court concluded that this testimony cannot assist the jury because it "will not provide any insight as to whether [Todmann] forged the signature, especially where, as here [the expert's] 'finding is far from conclusive." (J.A. at 22.) At the outset, we note that the trial court applied Federal Rule of Evidence 702 in excluding this testimony. However, as Todmann correctly points out, this Court explicitly held in *Phillips v. People*, 51 V.I. 258, 273 (V.I. 2009), that the Uniform Rules of Evidence ("URE"), codified as 5 V.I.C. §§ 771-956, govern in the local Virgin Islands courts. In light of the fact that our decision in *Phillips* was entered six weeks before the trial court issued its exclusionary order, we can discern no reason why the court failed to apply the URE in this case.

■■ As we specifically held in *Ritter*, 5 V.I.C. § 911(2) applies when a party seeks to admit expert testimony in local Virgin Islands courts. *See* 51 V.I. at 366. Title 5, section 911(2) provides:

> If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (a) based on facts or data perceived by or personally known

---

[4] For the purposes of convenience, we refer to the People's proffered handwriting witness as an expert. We note that the trial court made no express or implied finding that the witness was not qualified to testify as an expert.

or made known to the witness at the hearing and (b) within the scope of the special knowledge, skill, experience or training possessed by the witness.

In contrast, Rule 702 of the Federal Rules of Evidence ("FRE"), which is the federal counterpart to 5 V.I.C. § 911(2), provides:

> If scientific, technical, or other specialized knowledge *will assist the trier of fact to understand the evidence or to determine a fact in issue*, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702 (emphasis added). Unlike FRE 702, title 5, section 911(2) of the Virgin Islands Code does not require that the expert's testimony assist the trier of fact to understand the evidence or to determine a fact in issue. Recognizing the distinction between the two rules, Todmann[5] argues that the URE "envisions the trial judge acting as a gatekeeper, as directed in *Daubert*" and that "arguably no judge would allow testimony that would not assist the trier of fact, even if the Rules do not specifically require this, since non-helpful testimony would not advance the trial." (Appellee's Br. at 5.). Todmann maintains that this Court "should be loathe to interpret the rule in a manner that would cancel out a requirement upheld in courts nationwide."[6] (*Id.* at 7.)

---

[5] In their initial brief, the People inexplicably failed to note this distinction or to cite to the URE or this Court's decisions in *Ritter* and *Phillips*, which are binding and precedential in the Virgin Islands.

[6] In urging us to apply FRE 702's assist the trier of fact requirement because pre-existing case law has applied the requirement in the Virgin Islands, Todmann cites to *M.A.P. v. Ryan*, 285 A.2d 310 (D.C. 1971). We note, however, that Todmann's citation to *M.A.P.* is misleading. In that case, the D.C. Court of Appeals stated that the "Congressional Act which made the D.C. Court of Appeals the highest court in the District of Columbia, no longer subject to review by the U.S. Court of Appeals, did not erase the case law of the District of Columbia derived from decisions of the U.S. Court of Appeals prior to the effective date of the Act." *See M.A.P.*, 285 A.2d at 312. Importantly, however, the *M.A.P.* court held that it was not bound by a prior decision of the U.S. Court of Appeals, although such a decision "is entitled

■ We observe that the amended version of the URE[7] now requires, as does FRE 702, that expert testimony assist the trier of fact to understand the evidence or determine a fact in issue. However, rather than adopting the URE *as amended*, the Legislature enacted each individual URE as a separate, distinct statute. Accordingly, as 5 V.I.C. § 911(2) represents a law of the Virgin Islands, this Court has no choice but to apply that statute, which reflects the 1953 version of the URE, until such time as the Legislature repeals or amends 5 V.I.C. §§ 771-956. *See generally, Friedrich v. U.S. Computer Servs.*, 974 F.2d 409, 419 (3d Cir. 1992) ("[A] court may not rewrite an unambiguous law . . . .").

■ As noted by Todmann, the URE contained in the Virgin Islands Code include a general relevancy requirement for evidence admitted in the Virgin Islands. Specifically, 5 V.I.C. § 777(f) provides that "all relevant evidence is admissible." Relevant evidence is defined in the Virgin Islands by statute as "evidence having any tendency in reason to prove any material fact." 5 V.I.C. § 771(2). Therefore, a trial judge may not admit any evidence that does not tend to prove any material fact. Notably, the United States Supreme Court held in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), that FRE 702's "assist the trier of fact" or helpfulness requirement goes primarily to relevance. The *Daubert* Court reasoned that evidence which does not relate to any issue in the case is not relevant and, thus, is not helpful. 509 U.S. at 591 (holding that FRE 702 requires that

---

to great respect," and ultimately determined that the prior decision of the U.S. Court of Appeals was erroneously decided and should not be followed. *Id.*

[7] URE 702(a) currently reads:

If a witness's testimony is based on scientific, technical, or other specialized knowledge, the witness may testify in the form of opinion or otherwise if the court determines the following are satisfied:

(1) the testimony will assist the trier of fact to understand evidence or determine a fact in issue;

(2) the witness is qualified by knowledge, skill, experience, training, or education as an expert in the scientific, technical, or other specialized field;

(3) the testimony is based upon principles or methods that are reasonably reliable, as established under subdivision (b), (c), (d), or (e);

(4) the testimony is based upon sufficient and reliable facts or data; and

(5) the witness has applied the principles or methods reliably to the facts of the case.

evidence be both reliable and relevant). Consequently, the assist the trier of fact requirement embodied in FRE 702, but excluded from 5 V.I.C. § 911(2), is equivalent to a requirement of relevance. *Accord United States v. Ford,* 481 F.3d 215, 219 (3d Cir. 2007) ("The District Court assessed both the reliability and *helpfulness or relevance* concerns expressed in *Daubert.*" (emphasis added)).

In the case before us, the trial court held that the expert's "far from conclusive" testimony that Todmann may have signed Farrow's name to the memo cannot assist the jury. The trial court's order states that "[t]he case law of this jurisdiction makes it clear that handwriting analysis is reliable and generally admissible, if it 'is relevant to the task at hand.'" (J.A. at 21.) From this language, it appears that the trial court acknowledges that the "assist the trier of fact" requirement is equivalent to a relevancy determination. Therefore, the trial court essentially held that the inconclusive testimony as to whether Todmann signed Farrow's name to the memo is irrelevant.

█ As the People itself acknowledges, Todmann is not charged with forging the memo himself, pursuant to 14 V.I.C. § 791(1); rather he is charged with attempting to pass as genuine a document that has been forged, pursuant to 14 V.I.C. § 791(2). Thus, the People are not required to prove that Todmann forged the memo, only that he knew the signature on the memo was not genuine when he submitted it to GERS's human resources department. As a consequence, the trial court could validly conclude that the expert's testimony that Todmann may have signed the memo is irrelevant given the offenses charged.[8] Because the trial court essentially determined that the testimony relating to Todmann was not relevant and because relevancy is the functional equivalent of FRE 702's "assist the trier of fact" requirement, we cannot conclude that the trial court's decision to exclude this portion of the testimony was arbitrary or

---

[8] It should be noted that the trial court appears to have misconstrued the offenses with which Todmann was charged. The court's order states that "the expert will not provide any insight as to whether [Todmann] forged the signature" and "the People are obviously contending that [Todmann] wrote the signature." (J.A. at 22.) As stated above, it is because Todmann is not charged with forging the document himself that this piece of testimony may be deemed irrelevant by the trial court.

irrational.[9] *See United States v. Universal Rehab. Servs. (PA), Inc.,* 205 F.3d 657, 665 (3d Cir. 2000) ("In order to justify reversal [under an abuse of discretion standard], a [trial] court's analysis and resulting conclusion must be 'arbitrary or irrational.' "). Accordingly, we find no abuse of discretion in excluding the inconclusive proposed expert testimony that Todmann may have signed Farrow's name to the memo.[10]

### 2. There Was No Abuse of Discretion in the Exclusion of the Testimony that Farrow Very Probably Did Not Sign the Memo

In excluding the handwriting expert's proffered testimony that Farrow very probably did not sign the memo, the trial court concluded that the probative value of the testimony is substantially outweighed by the danger of unfair prejudice, delay and confusion. In particular, the trial court concluded that it is highly likely that the jury will assume from the expert testimony that, because Farrow very probably did not sign the document, Todmann must have signed Farrow's name to the memo. The People briefly argue on appeal that this testimony "cannot confuse jury, but would clarify the issues for the jury and establish a material issue." (Appellant's Br. 13.)

As it did with respect to whether the testimony relating to Todmann could assist the jury, the trial court erroneously relied on the FRE when conducting its prejudice analysis. FRE 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Title 5, section 885 of the Virgin Islands Code, which is the URE counterpart to FRE 403 states:

> Except as in this chapter otherwise provided, the judge may in his discretion exclude evidence if he finds that its probative value is sub-

---

[9] Although the partial dissent goes further and concludes that this piece of evidence should also have been excluded under FRE 403, we confine our analysis to 5 V.I.C. § 911(2) and FRE 702 as the trial court excluded this evidence solely on grounds that it could not assist the trier of fact.

[10] Importantly, as our review of the trial court's exclusion of evidence is governed by an abuse of discretion standard, the test is not what this Court would have concluded if it had determined the admissibility of the evidence in the first instance. Rather, the proper test on appellate review is whether the trial court's exclusion of the evidence is arbitrary or irrational. *See, e.g., United States v. Universal Rehab. Servs. (PA), Inc.,* 205 F.3d 657, 665 (3d Cir. 2000).

stantially outweighed by the risk that its admission will (a) necessitate undue consumption of time, or (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or (c) unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered.

Although this Court clearly stated in *Phillips* that the trial court must apply the URE rather than the FRE, we nevertheless held in *Mulley*, 51 V.I. at 410-411, that the trial court's improper reliance on FRE 403 was harmless because FRE 403 contains virtually the same language as 5 V.I.C. § 885.[11]

■■ When determining whether to exclude evidence under 5 V.I.C. § 885, as when determining whether to exclude evidence under FRE 403, the trial court is required to engage in a balancing test to weigh the evidence's probative value against the danger of unfair prejudice, undue consumption of time, confusing of the issues, or misleading of the jury. *See Mulley*, at 410. In reviewing the trial court's conclusion that the probative value of the testimony relating to Farrow is substantially outweighed by the danger of unfair prejudice, this Court is mindful that, "[i]f judicial restraint is ever desirable, it is when [an unfair prejudice] analysis of a trial court is reviewed by an appellate tribunal." *Gov't of the V.I. v. Albert*, 241 F.3d 344, 347 (3d Cir. 2001) (cited in *Mulley*, 51 V.I. at 409).[12] Thus, we may not reverse the trial court's determination under Rule 403 or 5 V.I.C. § 885 unless we find that the court acted arbitrarily or irrationally. *See id.*

Undoubtedly, the handwriting expert's proffered testimony that Farrow very probably did not sign the memo is probative. As stated above, the People must prove as one of the essential elements of the offenses charged that the document was not genuine. In other words, the People must prove that Farrow did not sign the memo. Notably, the trial court did not

---

[11] Although the trial court's reliance on the FRE is harmless in this case, we are compelled to remind the trial court that it is not excused from conducting its prejudice analysis under 5 V.I.C. § 885 in the future.

[12] Because 5 V.I.C. § 885 is virtually identical to FRE 403, we may turn to judicial decisions interpreting the federal rule to assist in interpreting our local rule. *See Mulley*, 51 V.I. at 410-411; *see also People v. Pratt*, 50 V.I. 318, 322 (V.I. 2008).

disagree as to the probativeness of this testimony.[13] Rather, the trial court held that exclusion of the testimony was warranted because the probativeness was substantially outweighed by the danger of unfair prejudice, delay, *and* confusion. We note that the trial court's order does not clarify how the testimony would cause delay. The trial court's concern that the jury is highly likely to assume that Todmann wrote the signature, since Farrow very probably did not write it, appears to go to whether the testimony would be unfairly prejudicial or confusing.[14]

The advisory committee notes to FRE 403 explain that " '[u]nfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FED. R. EVID. 403 advisory committee notes. Similarly, we stated in *Mulley* that "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." 2009 V.I. Supreme LEXIS 34, at *7 (quoting *Old Chief v. United States*, 519 U.S. 172, 180, 117 S. Ct. 644, 650 136 L. Ed. 2d 574 (1997)). Title 5, section 885 speaks in terms of "undue" prejudice, which is similar to the FRE's phrase "unfair" prejudice. *See* BLACK'S LAW DICTIONARY 1218 (8th ed. 2004) (defining "undue prejudice" as "[t]he harm resulting from a fact-trier's being exposed to evidence that is persuasive but inadmissible . . . or that so arouses the emotions that calm and logical reasoning is abandoned").

It is clear to this Court from the language of the trial court's order that the court conducted the necessary balancing test. Although recognizing the probative value of the testimony, the trial court essentially concluded that the jury was highly likely to misuse the expert's testimony that Farrow very probably did not sign the memo. *See Jones on Evidence Civil and Criminal*, 7th Ed., 1994, 294-98, Sec. 11:14 (explaining that unfair prejudice can be divided into two subcategories: " 'emotional prejudice and misuse prejudice' "). Moreover, the availability of other

---

[13] The partial dissent heavily emphasizes the relevance of this piece of evidence. It is clear from the trial court's order that the judge recognized the probative value of this evidence, as do we, but the judge nevertheless found that the probativeness was substantially outweighed by the danger of unfair prejudice. Accordingly, it is on this second prong of the prejudice analysis that we must focus.

[14] Unfair prejudice, confusion of the issues, and misleading the jury are frequently used interchangeably. *See Jones on Evidence Civil and Criminal*, 7th Ed., 1994, 290, Sec. 11:12.

means of proof is an appropriate factor to consider when making an undue prejudice determination. *See United States v. Sriyuth*, 98 F.3d 739, 747-48 (3d Cir. 1996) (stating that the appellate court should consider the "genuine need for the challenged evidence"); *see also* FED. R. EVID. 403 advisory committee notes. Here, the trial court, recognizing the probativeness of the testimony, concluded that the People were not without other probative evidence to establish that Farrow did not sign the memo. Specifically, the People may call Farrow himself as a witness to testify that the signature on the memo was not his. While we agree with the partial dissent that expert testimony as to this fact would bolster Farrow's testimony, thereby strengthening the People's case, the balancing test required by 5 V.I.C. § 885 requires that consideration also be given to the undue prejudice to the defendant if the jury was to misuse the expert's testimony to convict Todmann on grounds not directly related to the elements of the offenses charged.

In light of the fact that the People do not have a genuine need for this expert testimony since the People may call Farrow as a witness, we cannot conclude that the trial court acted arbitrarily or irrationally in excluding the handwriting expert's testimony that Farrow very probably did not sign the memo. Significantly, the People do not contend that the trial court acted arbitrarily or irrationally.[15] Accordingly, mindful of the judicial restraint we must exercise when reviewing the trial court's determination to exclude evidence under 5 V.I.C. § 885, we find no abuse of discretion as to the exclusion of the proposed expert testimony that Farrow very probably did not sign the memo.

## III. CONCLUSION

This Court holds that the exclusion of the inconclusive expert testimony that Todmann may have signed the memo was not an abuse of discretion, because the trial court's holding that such testimony cannot assist the trier of fact is equivalent to a determination that the testimony

---

[15] Importantly, it is not enough under an abuse of discretion standard of review that we may doubt the correctness of the trial court's unfair prejudice determination in light of the alternative remedy of issuing a limiting instruction to the jury under 5 V.I.C. § 776. Thus, although the partial dissent may be correct that a limiting instruction is a "plausible alternative" to exclusion of this piece of testimony, the partial dissent does not maintain that the failure to give such a limiting instruction renders the trial court's decision arbitrary or irrational. (Dissenting Op. at 16.)

was not relevant. Additionally, because the trial court conducted the balancing test required for exclusion of testimony on grounds of undue prejudice, we hold that there was no abuse of discretion in excluding the testimony that Farrow very probably did not sign the memo. Accordingly, we affirm the Superior Court's April 28, 2009 order granting Todmann's motion *in limine* to exclude all of the proffered testimony of the People's handwriting expert.

## DISSENTING OPINION

### I. FACTS AND PROCEDURAL HISTORY

SWAN, J., Affirming in Part, Dissenting in Part. The People of the Virgin Islands ("the People" or "Appellant") filed an interlocutory appeal from the Superior Court's April 28, 2009 Order, prohibiting Appellant's handwriting expert witness from testifying in the trial of this case. For the following reasons, I would allow the handwriting expert to testify about his handwriting analysis pertaining to Carver Farrow ("Farrow"), but would preclude him from testifying about the Willis Todmann ("Todmann" or "Appellee") handwriting analysis.

Todmann, former Chief Financial Officer ("CFO"), and former Acting Administrator of the Virgin Islands Government Employees Retirement System ("GERS"), is currently awaiting trial in the Superior Court of the Virgin Islands on charges, which are enumerated in a twenty-six count Superseding Information, charging him with the following: Counts I and II, Forgery, in violation of title 14, section 791(2) of the Virgin Islands Code; Count III, Forgery, in violation of title 14, section 791(4) of the Virgin Islands Code; Count IV, Obtaining Money by False Pretense, in violation of title 14, section 834(2) of the Virgin Islands Code; Count V, Embezzlement by Fiduciaries, in violation of title 14, section 1091 of the Virgin Islands Code; Count VI, Embezzlement or Falsification of Public Accounts, in violation of title 14, section 1662(1) of the Virgin Islands Code; Count VII, Embezzlement or Falsification of Public Accounts, in violation of title 14, section 1662(6) of the Virgin Islands Code; Count VIII, Embezzlement or Falsification of Public Accounts, in violation of title 14, section 1662(7) of the Virgin Islands Code; Count IX, Grand Larceny, in violation of title 14, sections 1081(a) and 1083(1) of the Virgin Islands Code; Counts X-XXII, Conversion of Government Property, in violation of title 14, sections 895(a) and (b) of the Virgin

Islands Code; Count XXIII, Aggravated Identity Theft,[1] in violation of title 14, sections 2203(a) of the Virgin Islands Code; Count XXIV, Identity Theft, in violation of title 14, section 2202(a)(1), (d)(1)(E) of the Virgin Islands Code; Count XXV, Obtaining Money by False Pretense, in violation of title 14, section 834(2) of the Virgin Islands Code, and; Count XXVI, Forgery, in violation of title 14, section 791(2) of the Virgin Islands Code. (Superseding Information 1-10; J.A. at 24-33.) The issues on appeal concern the crime of Forgery.

Count I charges:

> On or about the period between December 1, 2005 and December 31, 2005, in St. Thomas, Virgin Islands, WILLIS C. TODMANN, did, with the intent to defraud another, *utter, publish, pass or attempt to pass as true and genuine*, a document containing the forged handwriting of another, knowing same to be forged or false, by fraudulently submitting a memorandum containing the forged signature of Carver Farrow to the human resources section of the Government Employees Retirement System agency, **in violation of 14 VIC 791(2), FORGERY**.

(J.A. at 24.) (emphasis added, bold typeface in original). Essentially, in a direct quotation from page six of its brief, the People alleges that Appellee was "unlawfully obtaining extra salaries from the government without lawful authorization, through the use of a July 22, 2005 forged memorandum purporting to grant him authorization from the chairman of the GERS Board of Directors, Carver Farrow (Farrow), for the payments of the extra salaries." (Appellant's Br. 6.) The July 22, 2005 Memorandum, according to Appellant,

> was an interoffice memorandum [signed and] dated July 27, 2005, from Todmann addressed to Farrow, requesting approval to receive the full salary of the CFO *in addition to* his salary as acting administrator. At the bottom of the memorandum there was a section 'approved/disapproved', approved was circled and the purported signature of Farrow on the bottom.

---

[1] The crimes delineated in title 14, section 2202 of the Virgin Islands Code are titled "Identity theft," while the crimes delineated in title 14, section 2203 are titled "Aggravated identity theft."

(*Id.*) (emphasis in original). Accordingly, the undeniable impression conveyed by the interoffice memorandum is that Mr. Farrow has approved the request for Appellee to simultaneously receive two salaries: one salary for serving as the CFO of the GERS and another salary for serving as the Acting Administrator of the GERS. Pursuant to the GERS Board of Trustees' Resolution 03-2000, Todmann was entitled to receive fifteen percent (15%) of the Administrator's salary as compensation for serving as the Acting Administrator. (J.A. at 35; Affidavit of Mae Wheatley at 2.)

In his interview with the police, Farrow stated "that he had no knowledge of the memorandum dated July 22, 2005 nor did he sign the endorsement . . . on the memorandum. Farrow also stated that he never authorized anyone on his behalf to sign his name on the memorandum. Farrow further stated that he would not have approved Willis C. Todmann receiving both salaries at the same time." (J.A. at 36; Affidavit of Mae Wheatley at 3.)

Handwriting exemplars from both Farrow and Todmann were scientifically analyzed by a handwriting expert, James F. Larner ("Larner"), a Senior Forensic Document Examiner with the United States Department of Homeland Security. (J.A. at 50, 64; Curriculum Vitae of James F. Larner at 1.) In his report, Larner's use of "S" refers to a "subject document" and his use of "Q" refers to a "questioned document." Larner's Report concludes that "there is evidence to suggest that Willis Todmann (S-1) may have written the questioned signature and date on Exhibit Q-1; however, this finding is far from conclusive." (J.A. at 63; Handwriting Report at 1.) The Report continues, "Carver Farrow (S-2) very probably did not write the questioned signature and date on Exhibit Q-1." (J.A. at 63; Handwriting Report at 1.) Exhibit Q-1, or the questioned document, is the July 27, 2005 interoffice memorandum, which purports to approve the additional salary for Todmann and has the alleged signature of Farrow. Larner further explained that his "qualified opinion regarding Willis Todmann (S-1) is due to features of the questioned signature that are not represented in the S-1 specimen writing." (J.A. at 63; Handwriting Report at 1.)

In his Motion to Exclude the Handwriting Analysis, Appellee argues that the handwriting expert's "opinion, however, is far too speculative to be of any assistance to the jury." (J.A. at 67; Defendant's Motion *in Limine* to Exclude People's Expert Witness at 2.) Specifically, Appellee avers that "[a]n expert witness is not necessary to speculate on whose

signature it *'may have been.'* " (*Id.*) Appellee advances the same arguments on appeal. Appellant argued before the trial court that Larner's "expert findings are extremely relevant to the issue of the forgery." (J.A. at 76; Defendant's Motion *in Limine* to Exclude People's Expert Witness at 2.) Likewise, Appellant advances the same argument on appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction, pursuant to title 4, section 33(d)(2) of the Virgin Islands Code, to review "[a]n appeal by the Government of the Virgin Islands . . . from a decision or order of the Superior Court suppressing or excluding evidence . . . in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information[.]" V.I. CODE ANN. tit. 4, § 33(d)(2). The Superior Court entered its Order on April 24th, 2009, granting Appellee's Motion *in Limine* to Exclude People's Expert Witness. Appellant filed its Notice of Appeal on May 22nd, 2009. Consequently, we have jurisdiction to hear this interlocutory appeal.

A trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *General Elec. Co. v. Joiner*, 522 U.S. 136, 147, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997); *Elcock v. Kmart Corp.*, 233 F.3d 734, 754 (3d Cir. 2000).

## III. ISSUES[2]

1. Whether the trial court abused its discretion in prohibiting the People's handwriting expert from testifying because the expert's findings purportedly would not assist the jury.

---

[2] In its Notice of Appeal the People raised two issues for interlocutory review by this Court: "(1) granting the defendant's motion *in limine* to exclude the testimony of the People's handwriting expert and (2) allowing the introduction of out of court statements made by the late Attorney Alphonso Nibbs, for the purpose of establishing the defendant's purported advice of counsel defense." (J.A. at 19; Notice of Appeal at 1.) Concerning the second issue, the People appeal from the trial court's April 24, 2009 Order "allow[ing] the introduction of [Attorney] Nibbs' statement for the purpose of establishing an advice of counsel defense." (Order Denying People's Opposition to Defendant's Use of Advice of Legal Counsel Defense at 2.) The People have advanced no argument in support of the second issue on interlocutory appeal. Virgin Islands Supreme Court Rule 22(a)(5) requires Appellant to advance an argument in its brief and to cite authorities in support of that argument. V.I.S.CT.R. 22(a)(5). Consequently, this dissent will not address Appellant's second issue in its Notice of Appeal.

2. Whether the trial court abused its discretion in determining that the probative value of the handwriting expert witnesses' testimony concerning Farrow's handwriting exemplar was substantially outweighed by the danger of unfair prejudice, confusion and delay.

## IV. DISCUSSION

### A. Whether the trial court abused its discretion in prohibiting the People's handwriting expert from testifying because the expert's findings purportedly would not assist the jury.

I separate the handwriting expert findings into two categories; namely, the "Todmann findings" and the "Farrow findings." Further, after individually reviewing the two sets of findings, I arrive at different conclusions for both findings.

#### 1. Todmann Findings

I agree with the majority that the trial court did not abuse its discretion in excluding the handwriting expert witnesses' testimony and findings concerning Todmann's handwriting exemplar. The handwriting expert concluded that even though Todmann may have generated the handwriting exemplar attributed to him, this "finding is far from conclusive." Consequently, this information "will not assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. The expert witness finding on the Todmann handwriting analysis is speculative and would lead to conjecture by the jury. Moreover, the probative value of the results of the Todmann handwriting examination is minuscule and negligible. Therefore, the result has the potential for misleading the jury or of affording the results of the analysis more credence than is deserved. Accordingly, the Todmann handwriting analysis results should be excluded from the trial. *See* FED. R. EVID. 403.

#### 2. Farrow Findings

On the Farrow handwriting analysis, this Court must determine whether the trial court abused its discretion by prohibiting the People's handwriting expert from testifying about Farrow's alleged signature on the document which authorized a second full salary for Todmann.

Resolution of this question depends upon whether the handwriting expert's testimony would assist the trier of fact to determine a question of fact that is in issue. The question of fact that is in issue is the authenticity of Farrow's signature. Based on the record submitted on appeal, I conclude that the expert's testimony would assist the jury or the trier of fact to determine a fact that is in issue, which is whether the purported signature of Farrow on the July 27, 2005 interoffice memorandum, authorizing a second full salary for Todmann, is Farrow's signature.

Todmann is charged in a twenty-six count Superseding Information with various fraud and theft crimes for his receipt of the full amount of an extra salary for serving as Acting Administrator of GERS. (J.A. at 24-33.) At the crux of the criminal charges against Appellee is the allegation that he presented a fraudulent memorandum authorizing the additional full salary payments for one of two positions he simultaneously held. In order to determine whether the interoffice memorandum is fraudulent, it is necessary to determine whether the memorandum was signed by Farrow whose name appears on the signature line of the memorandum that purportedly authorized the extra full salary for Todmann. In support of its contention that the signature on the interoffice memorandum is fraudulent, the People will undoubtedly subpoena Farrow as a witness. (*Id.* at 3.) Farrow has categorically denied that the signature on the interoffice memorandum is his signature. Therefore, it is anticipated that, at trial, Farrow will testify and disavow the signature on the interoffice memorandum as his signature. Additionally, the People has secured the assistance of Larner, a United States Secret Service handwriting expert, who has analyzed handwriting exemplars or specimens from both Farrow and Todmann, and he is expected to testify at trial. The handwriting expert has concluded that Farrow "very probably did not write the questioned signature" on the interoffice memorandum which authorizes two salaries for Todmann. The expert's conclusion would unquestionably buttress and corroborate Farrow's assertion that he did not sign the memorandum authorizing payment of the second full salary to Todmann.

I am mindful that the Virgin Islands has legislatively adopted the Uniform Rules of Evidence, which is embedded in title 5, chapter 67 of the Virgin Islands Code. Title 5, section 911 of the Virgin Islands Code provides, in pertinent part that, "(2) If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (a) based on facts or data

perceived by or personally known or made known to the witness at the hearing and (b) within the scope of the special knowledge, skill experience or training possessed by the witness. . . ."

Additionally, I find the Federal Rules of Evidence to be a highly persuasive authority. Federal Rule of Evidence 702, unlike title 5, section 911, permits an expert witness to testify "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue[.]" FED. R. EVID. 702. Thus, compared to the Federal Rules of Evidence, it appears that because of section 911 there is a low threshold for the use of expert testimony in the Virgin Islands. It appears that section 911 would permit an expert to testify on any subject matter within the expert's field and of which the expert has personal knowledge, provided the expert testimony is relevant to at least one issue in the case.

Evidence offered for admission at trial must also be relevant. In discussing Federal Rule of Evidence 702, the Supreme Court of the United States enunciated that "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) (quoting WEINSTEIN & BERGER ¶ 702[02], p. 702-18.) (internal quotations omitted). The requirement that expert testimony be "relevant" means that the expert testimony be pertinent to the issues at trial. *See Daubert*, 509 U.S. at 597 ("Pertinent evidence based on scientifically valid principles will satisfy those demands."). An explicit definition of "relevance" is found in rule 401 of the Federal Rules of Evidence, which provides "[r]elevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401.

This principle of relevant evidence is unquestionably applicable to the jurisprudence of the Virgin Islands. Title 5, section 771(2) of the Virgin Islands Code defines "relevant evidence" as "evidence having any tendency in reason to prove any material fact." 5 V.I.C. § 771(2). "Relevance" is implicit in the requirement of title 5, section 911 that an expert's testimony be within the expert's specialized field and pertaining to facts of which the expert has personal knowledge and that the testimony be helpful to the trier of fact. One material fact is whether Farrow signed the document authorizing the two salaries for Todmann.

451

Because Farrow has denied signing the document, the expert testimony which tends to corroborate Farrow's contention is absolutely relevant. (*See id.*) Irrefutably, whether Farrow signed the interoffice memorandum is a fact of consequence to the determination of several counts in this case. With the handwriting expert's analysis stating that Farrow "very probably did not" sign the interoffice memorandum, the handwriting expert's analysis would make a fact of consequence and a material fact in the case more probable than that fact would be without the handwriting expert's analysis.

Additionally, neither party disputes that Larner's opinions were based on facts or data made personally known to him, or that the facts and data analyzed by him were not within the scope of his special knowledge, skill, experience or training. The Joint Appendix for this case includes the American Society for Testing and Materials International's ("ASTM International") Standard Terminology for Expressing Conclusions of Forensic Document Examiners document ("ASTM International document"). (J.A. at 93-95.) The ASTM International document explains that the standard terminology included therein is "intended to assist forensic examiners in expressing conclusions based on their examination." (*Id.* at 93.) The ASTM International document further explains that document examiners begin their analysis "from a point of complete neutrality[,]" and express their conclusions using "an infinite number of gradations of opinion toward an *identification* or *toward an elimination.*" (*Id.*) The ASTM International document defines the terms "strong probability, highly probable and very probable" to mean that "the evidence is very persuasive, yet some critical feature or quality is missing so that an *identification* is not in order; however, the examiner is virtually certain that the questioned and known writings were written by the same individual." (*Id.* at 94.) (emphasis in original). The ASTM International document defines "probably did not" to mean that "the evidence points rather strongly against the questioned and known writings samples having been written by the same individual, but, as in the probable range above, the evidence is not quite up to the 'virtually certain' range." (*Id.*)

The United States Court of Appeals for the Third Circuit ("Third Circuit") has opined on numerous occasions that "[h]andwriting experts often give their opinions in terms of probabilities rather than certainties." *United States v. Rosario*, 118 F.3d 160, 163 (3d Cir. 1997) (considering a handwriting expert's testimony that it was "probable" that the defendant

452

authored a forged check in affirming a forgery conviction); *see also, United States v. McGlory,* 968 F.2d 309, 346 (3d Cir. 1992) (under the Federal Rules, handwriting testimony is admissible "even if the handwriting expert is not absolutely certain that the handwriting is that of the defendant."); *see also, United States v. Galvin,* 394 F.2d 228, 229 n.1 (3d Cir. 1968) (handwriting testimony is not rendered inadmissible merely "because it expresses a probability"). Handwriting experts commonly testify, and courts commonly accept that "rendering 'less-than-certain' opinions are an accepted practice in [the] field." *United States v. Mornan,* 413 F.3d 372, 381 (3d Cir. 2005) (footnote and citations omitted).

Appellant argues that "[t]he issue of fact to be proven is not that the Defendant himself forged the signature, as he is not charged with that offense as the trial court suggested, but that he is charged with submitting a forged authorization memorandum." (Appellant's Br. 10.) Therefore, as part of the proof that the interoffice memorandum authorizing the full extra salary has the forged signature of Farrow, expert testimony that Farrow "very probably did not" write the questioned signature on the interoffice memorandum has probative value and will assist the trier of fact to determine a fact in issue. The issue of whether Farrow signed the July 22, 2005 memorandum is also conceivably relevant to the charges in counts II, IV, VI and X-XXII, of the Superseding Information where the People must prove that the compensation received by Appellee was in excess of the rate approved by the GERS Board and was received without authorization. Because the July 22, 2005 interoffice memorandum authorizing the additional full salary payments purportedly bears Farrow's signature, it is pivotal for the People to prove that Farrow did not sign, nor did he authorize anyone to sign on his behalf, the signature on the interoffice memorandum. Consequently, the handwriting expert's findings and conclusions on Farrow's handwriting exemplar has immense probatory value.

Concerning Farrow's handwriting, Larner's Report concluded that "Carver Farrow . . . very probably did not write the questioned signature and date[.]" (J.A. at 63; United States Secret Service, Forensic Services Division Report 1.) Undeniably, the conclusion of the handwriting expert corroborates and validates Farrow's contention that he did not sign the interoffice memorandum, thereby supporting the existence of an element of the crimes of forgery in the Superseding Information. The parties are

reminded that when Farrow testifies as a People's witness, his credibility becomes an issue for determination by the jury. Moreover, his credibility will undoubtedly be attacked by the defense on cross-examination. *See, e.g., United States v. Smalley*, 754 F.2d 944, 951 (11th Cir. 1985) ("Matters affecting the credibility of the witness are always relevant on cross-examination."); *United States v. Arnott*, 704 F.2d 322, 324 (6th Cir. 1983) ("The subject matter of direct examination and issues of witness credibility are always open to cross-examination.") (citing *United States v. Raper*, 676 F.2d 841, 219 U.S. App. D.C. 243 (D.C. Cir. 1982)). Any evidence, such as the handwriting expert's findings, that supports or corroborates Farrow's credibility that he did not sign the interoffice memorandum, is probative of an issue in the case. *See United States v. Partin*, 493 F.2d 750, 762 (5th Cir. 1974) ("the jury should, within reason, be informed of all matters affecting a witness's credibility to aid in their determination of the truth[.]") (citation omitted). Moreover, "[w]here the [g]overnment's case may stand or fall on the jury's belief or disbelief of one witness, [the witnesses'] credibility is subject to close scrutiny[.]" *Id.* at 763 (quoting *McConnell v. United States*, 393 F.2d 404, 406 (5th Cir. 1968)).

The language in Larner's Report, "very probably did not" is not unlike the term "strong probability did not" in the ASTM International document. This conclusion is supported by the ASTM International document which, in parenthesis beside the words "strong probability" lists "highly probable" and "very probable," as synonyms for "strong probability." The ASTM International document also supports the conclusion that the terms defined therein are examples, and not strictly applied terms for which precise use is required. For example, following the definition for "strong probability did not" is a discussion section which states in its entirety, "[c]ertainly those examiners who choose to use 'unlikely' in place of 'probably did not' may wish to use 'highly unlikely' here." (J.A. at 94.) Moreover, the explanatory "significance and use" paragraphs in the general provisions of the ASTM International document explicitly state:

> Common sense dictates that we must limit the terminology we use in expressing our degrees of confidence in the evidence to terms that are readily understandable to those who use our services . . . as well as to other document examiners. . . . [T]he main purpose of the standard [is] to suggest terminology that is readily understandable.

454

(*Id.* at 93.) Accordingly, I conclude that considering the latitude inherent in the ASTM International definitions, and reading "very probably did not" as an alternative way to state "strong probability did not," there is probative value in the handwriting experts findings to help determine whether Farrow signed the interoffice memorandum authorizing the second full salary for Todmann. Therefore, I would reverse the trial court's order excluding the expert testimony pertaining to Farrow's signature on the interoffice memorandum authorizing the second full salary for Todmann.

**B.** **Whether the trial court abused its discretion in determining that the probative value of the handwriting expert witnesses' testimony concerning Farrow's handwriting exemplar was substantially outweighed by the danger of unfair prejudice, confusion and delay.**

Appellant also argues that the trial court abused its discretion in finding that, pursuant to the Federal Rules of Evidence, the probative value of allowing the handwriting expert witness to testify would be substantially outweighed by the danger of unfair prejudice, confusion and delay. The trial court based its finding on its conclusion that "[t]he potential for the jury to assume that because Mr. Farrow 'very probably' did not write the signature, the Defendant did so is highly likely." (J.A. at 22; Trial Court's April 24, 2009 Order at 2.) I reject the trial court's contention in finding that the jury will necessarily conclude that if Farrow did not sign the interoffice memorandum, then it must automatically or necessarily have been Todmann that signed the interoffice memorandum. Furthermore, I conclude that the trial court erred in excluding the handwriting expert's probative findings concerning Farrow. *See Gov't of the Virgin Islands v. Albert*, 241 F.3d 344, 349 (3d Cir. 2001) (concluding that the trial court's decision to admit "significantly probative" evidence "cannot be considered arbitrary or irrational.").

The trial court relied on Federal Rule of Evidence 403 to exclude Larner's testimony concerning Farrow's signature on the basis that such testimony "is substantially outweighed by the danger of unfair prejudice, delay and confusion." (J.A. at 22) (citation omitted). However, Appellee is specifically reminded that all evidence admitted against him is prejudicial, which is not the precept of rules governing the admissibility of evidence. For example, under Rule 403 the evidence must not be merely prejudicial; it must be unfairly prejudicial. The word "unfairly" is

the cornerstone and underpinning element of prejudicial evidence in Rule 403, which states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of *unfair* prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

FED. R. EVID. 403 (emphasis added).[3] The concept of *unfair* prejudice is embodied in the Advisory Committee's Note on Rule 403 of the Federal Rules of Evidence, which states:

> Rule 403 does not offer protection against evidence that is merely prejudicial, in the sense of being detrimental to a party's case. Rather, the rule only protects against evidence that is unfairly prejudicial. Evidence is unfairly prejudicial only if it has an undue tendency to suggest decision on an improper basis, commonly, though not necessarily an emotional one.

FED R. EVID. 403 advisory committee's note. It is inescapable that at trial the probative value of the evidence sought to be admitted will be discussed when title 5, section 776 of the Virgin Islands Code and the principles underlying Rule 403 of the Federal Rules of Evidence are implicated. Importantly, the more essential the evidence, the greater its probative value, and the less likely that a trial court should order the evidence excluded. *United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983), *cert. denied*, 466 U.S. 942, 104 S. Ct. 1924, 80 L. Ed. 2d 470 (1984).

Any concern about prejudice to Appellee caused by the handwriting expert's testimony about Farrow's signature can be assuaged by the trial court reciting a limiting instruction to the jury. The expert witness's testimony should be admitted only for the limited purpose of corroborating Farrow's testimony that he did not sign the interoffice memorandum appropriating the extra full salary for Todmann and that Farrow did not authorize anyone to sign the interoffice memorandum on

---

[3] Importantly, the language of title 5, section 911(2) does not refer to "prejudice," or to "unfair prejudice." However, because the trial court relied on this standard and because the litigants rely on this basis on appeal, it is important that my dissent address the issue implicated by Federal Rule of Evidence 403.

his behalf. Moreover, the trial court can give a limiting instruction to the jury immediately before the handwriting expert testifies. Similarly, the trial court can reiterate the same limiting instruction to the jury during its final instructions on expert witness testimony. This procedure would curtail or truncate any prejudice that can possibly inure to Appellee from the handwriting expert's testimony about Farrow's signature on the interoffice memorandum, which authorized the extra full salary to Todmann.

Giving a limiting instruction to the jury on the use of the handwriting expert's opinion on Farrow's signature is a plausible alternative to exclusion of the evidence, and has ample support in the laws of evidence. Title 5, section 776 of the Virgin Islands Code, which is titled "Limited admissibility" states in unequivocal and unambiguous language:

> When relevant evidence is admissible as to one party or for one purpose and is inadmissible as to the other parties or for another purpose, the judge upon request shall restrict the evidence to its proper scope and instruct the jury accordingly.

5 V.I.C. § 776. Additionally, the Federal Rules of Evidence are persuasively instructive on the issue. Rule 105 of the Federal Rules of Evidence provides:

**Rule 105. Limited admissibility**.

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

FED. R. EVID. 105. Therefore, an adroitly crafted limiting instruction to the jury would greatly reduce any perceivable prejudice to Appellee. This case illustrates a compelling basis and is the consummate case for utilizing a limited admissibility instruction, which is available in both our statutory laws and the Superior Court Rules. *See* SUPER. CT. R. 7.

Unquestionably, the handwriting expert's findings and conclusions are necessary to support Farrow's credibility that he did not sign the interoffice memorandum, which is an issue the jury must consider. Furthermore, if the jury finds that Farrow did not sign the interoffice memorandum, the jury must conclude that the memorandum is fraudulent, which conclusion supports several counts in the Superseding

Information which charges the crimes in this case. Therefore, the probability finding of the handwriting expert's conclusion, in conjunction with Farrow's contention, immeasurably supports the People's case.

## V. CONCLUSION

I conclude that the trial court did not abuse its discretion in finding that the handwriting expert witness's testimony would not assist the jury on its decision concerning Todmann's handwriting. However, the trial court abused its discretion in finding that the probative value of the handwriting expert witness's testimony is substantially outweighed by the danger of unfair prejudice, delay and confusion concerning Farrow's signature. Accordingly, I would affirm the trial court's decision to exclude the handwriting expert's opinion as to Appellee. However, I would reverse the trial court's opinion to exclude the handwriting expert's testimony as to Farrow.