**ANTILLES SCHOOL, INC., Appellant/Defendant**
**v.**
**JAMIE LEMBACH, Appellee/Plaintiff**

S. Ct. Civil No. 2015-0039

Supreme Court of the Virgin Islands

March 14, 2016

SIMONE R.D. FRANCIS, ESQ., Ogletree, Deakins, Nash, Smoak & Stewart, LLC, St. Thomas, USVI, *Attorney for Appellant.*

RYAN W. GREENE, ESQ., Law Offices of Ryan W. Greene, St. Thomas, USVI; JOEL H. HOLT, ESQ., Law Offices of Joel H. Holt, St. Croix, USVI, *Attorneys for Appellee.*

HODGE, Chief Justice; CABRET, Associate Justice; and SWAN, Associate Justice.

## OPINION OF THE COURT

(March 14, 2016)

HODGE, *Chief Justice.* Appellant Antilles School, Inc., appeals from a jury verdict in favor of the appellee, Jamie Lembach, as well as the Superior Court's denial of its motion to set aside the verdict. For the reasons that follow, we affirm, albeit on different grounds than those articulated by the Superior Court.

## I. BACKGROUND

On October 25, 2012, Lembach sued Antilles School in the Superior Court, asserting causes of action for negligence and premises liability. In his complaint, Lembach alleged that he attended a "Food Fair" at Antilles School on the night of January 28, 2012, and after exiting a taxi walked towards a dual-use pedestrian and vehicular bridge that went over a nine-foot deep natural gulley containing metal culverts. Lembach, who suffers from cataracts and was legally blind, tripped and fell, falling off the bridge and sustaining injuries that required his medical evacuation from St. Thomas to a hospital in West Palm Beach, Florida.

Prior to trial, Antilles School filed a motion to preclude Lembach's expert witness, Rosie Mackay, from testifying. In her expert report,

Mackay stated that the International Building Code, the National Fire Protection Life Safety Code, the Occupational Safety and Health Administration regulations, the National Safety Council Accident Prevention Manual, and the Encyclopedia of Occupational Health and Safety were all "in agreement" that "any drop[-]off of more than 48 inches requires protective measures, installed to a height of 42 [inches] above walking level, and should be well lit during hours of darkness." (J.A. 160-61.) In its motion, Antilles School primarily argued that these codes were inapplicable to the bridge since they were not codified as part of Virgin Islands law, and that permitting this testimony would do nothing but confuse the jury. The Superior Court, in a September 12, 2014 opinion, granted Antilles School's motion in part because Mackay made "no reference to the specific sections of the various safety codes that serve as the basis for her expert opinion" and concluded that in any event those codes did "not define the standard of care owed in the Virgin Islands." (J.A. 28.) Nevertheless, the Superior Court permitted Mackay to testify, without reference to the specific codes, that the bridge constituted a hazard because it lacked a sufficient protective barrier.

A jury trial began on September 29, 2014, in which the jury heard from several witnesses, including Mackay. On September 30, 2014, the Superior Court furnished its draft jury instructions to the parties, which provided separate instructions for Lembach's negligence and premises liability claims. On October 1, 2014, Antilles School submitted a written objection to the Superior Court's draft instructions, asserting that the separate instructions were unnecessary because "[p]remises liability is a theory of negligence, where the basis of the duty of care is the possession or control of the premises where [an] injury occurred," and "[t]he elements are the same — a plaintiff must prove: (1) duty, (2) breach, (3) causation, and (4) damages." (J.A. 277-78.) Nevertheless, at a jury instructions conference later that day, Antilles School proposed that the Superior Court's verdict form be revised to include only a single claim rather than two, because "whether they find [Antilles School] negligent under Count One or Count Two, you only need to ask them if they're negligent once." (J.A. 1289.) The Superior Court agreed, and revised the verdict form to remove all references to premises liability and couch the pertinent questions only in negligence terms. However, notwithstanding the revision to the verdict form, the Superior Court still separately instructed the jury on both negligence and premises liability.

Ultimately, the jury issued a verdict against Antilles School and in favor of Lembach, awarding him $328,169.98 in medical expenses and $1,500,000 for physical pain and suffering. However, in its verdict form, the jury answered "no" to the question of whether Lembach's negligence caused his injuries, but simultaneously attributed 80 percent causal negligence to Antilles School and 20 percent to Lembach. Although the Superior Court initially ordered supplemental briefing on the effect of the inconsistent verdict form, Lembach voluntarily agreed to reduce his recovery by 20 percent, and the Superior Court, in a February 26, 2015 opinion, accepted the reduction.

After trial, Antilles School moved for judgment as a matter of law or, in the alternative, a new trial. It also moved for remittitur, alleging that the amount of damages — even with the 20 percent comparative fault reduction — for pain and suffering were excessive. The Superior Court denied Antilles School's motions on April 8, 2015, and issued its judgment. Antilles School filed a timely notice of appeal with this Court on May 7, 2015, as well as a motion to amend the judgment with the Superior Court, which alleged that the April 8, 2015 judgment contained a clerical error relating to the date post-judgment interest would begin to accrue. The Superior Court granted the motion and issued an amended judgment on May 12, 2015, and Antilles School filed an amended notice of appeal with this Court on May 22, 2015.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court." V.I. CODE ANN. tit. 4, § 32(a); *see also* 48 U.S.C. § 1613a(d) ("Upon the establishment of the appellate court provided for in section 1611(a) of this title all appeals from the decisions of the courts of the Virgin Islands established by local law not previously taken must be taken to that appellate court."). The Superior Court's amended May 12, 2015 judgment is a final order adjudicating all of the issues between the parties, and therefore, this Court has jurisdiction over this appeal. *Allen v. HOVENSA, L.L.C.*, 59 V.I. 430, 434 (V.I. 2013).

The standard of review for our examination of the Superior Court's application of law is plenary, while the trial court's findings of fact are

reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). This Court reviews the Superior Court's decision to admit evidence for abuse of discretion, unless the decision is based on an interpretation of the law, in which case our review is plenary. *Francis v. People*, 56 V.I. 370, 379 (V.I. 2012).

## B. Judgment as a Matter of Law

■ Antilles School, as its first issue on appeal, contends that it is entitled to judgment as a matter of law because Lembach failed to introduce sufficient evidence at trial to satisfy the elements of negligence. A party is entitled to judgment as a matter of law when, in considering all of the evidence, accepting the nonmoving party's evidence as true, and drawing all reasonable inferences in favor of the nonmoving party, the court concludes that a reasonable jury could only enter judgment in favor of the moving party. *Kendall v. Daily News Publ'g Co.*, 55 V.I. 781, 786-87 (V.I. 2011). "In performing this narrow inquiry, [trial courts and appellate courts] must refrain from weighing the evidence, determining the credibility of witnesses, or substituting [their] own version of the facts for that of the jury." *Chestnut v. Goodman*, 59 V.I. 467, 475 (V.I. 2013) (quoting *Corriette v. Morales*, 50 V.I. 202, 205 (V.I. 2008)).

■ As this Court has previously held, "the foundational elements of negligence" are: "(1) a legal duty of care to the plaintiff, (2) a breach of that duty of care by the defendant (3) constituting the factual and legal cause of (4) damages to the plaintiff." *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (V.I. 2014). In the context of a negligence claim based on a premises-liability theory, this Court has eliminated the traditional common-law distinction between invitees, licensees, and trespassers, and has instead concluded "that the foreseeability of harm is the touchstone of [a land possessor's] duty."[1] *Id.* at 384 (citation and internal quotation marks omitted).

---

[1] In its April 8, 2015 opinion, the Superior Court correctly cited the elements of negligence that this Court adopted in *Machado*, but then held that it would "rel[y] on additional sections of Division 2, Negligence, of the Restatement (Second) of Torts, to define, clarify or expand upon these elements" without conducting the analysis required by *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011). (J.A. 67.) But the fact that this Court may have cited to — or even adopted a section of — a particular Restatement should not be construed as a "wholesale adoption" of the Restatements. *Gov't of the V.I. v. Connor*, 60 V.I. 597, 602 (V.I. 2014). This is illustrated by several decisions of this Court where it has agreed with a single Restatement section and then rejected another section found in the same Restatement. *Com-*

According to Antilles School, it is entitled to judgment as a matter of law because Lembach failed to prove "either breach of duty or causation." (Appellant's Br. 9.) Antilles School argues that Lembach's injuries were not foreseeable, since it "had no reason to foresee that the walkway presented an unreasonable risk of harm, that anyone would fail to 'discover' it, or that anyone had to be protected against it." (Appellant's Br. 11.) To support its claim, Antilles School cites to evidence that the bridge had been built in a manner consistent with statutory requirements and that there had been no prior incidents despite the bridge having been "used as a walkway by hundreds of students every day, and for hundreds of campus events for the general public." (*Id.*)

We disagree. During trial, Mackay testified, based on her training, experience and knowledge of the relevant safety standards, that the bridge needed a protective barrier that was at least 42 inches high because it was being used as a pedestrian walkway and the drop-off from the bridge was over 48 inches. Although Antilles School challenges the admissibility of Mackay's testimony, "when an appellate court reviews the sufficiency of the evidence, it must consider all of the evidence the [jury] had before it, including any evidence that is later determined to be inadmissible."[2] *Ambrose v. People*, 56 V.I. 99, 107 (V.I. 2012) (internal quotation marks omitted). The jury, were it to credit Mackay's testimony — as it apparently did — could reasonably conclude that Antilles School breached the applicable standard of care by failing to comply with relevant safety standards for pedestrian walkways.

---

pare *Palisoc v. Poblete*, 60 V.I. 607, 615-16 (V.I. 2014) (endorsing elements of malicious prosecution found in RESTATEMENT (SECOND) OF TORTS § 653), *with Matthew v. Herman*, 56 V.I. 674, 680-81 (V.I. 2012) (rejecting alienation of affection and criminal conversation torts found in RESTATEMENT (SECOND) OF TORTS §§ 683 and 685). Significantly, although this Court's decision in *Machado* had not been issued as of the time of trial, it had been issued more than seven months prior to the Superior Court's April 8, 2015 opinion.

[2] We recognize that the United States Supreme Court has held that federal appellate courts should exclude erroneously admitted expert testimony from consideration, and if the remaining admissible evidence is insufficient to support the verdict, a judgment as a matter of law is appropriate. *Weisgram v. Marley Co.*, 528 U.S. 440, 453, 120 S. Ct. 1011, 145 L. Ed. 2d 958 (2000). But we agree with those courts that have rejected this holding, and instead — just as in criminal cases — consider all the evidence the jury had before it in deciding whether to grant a judgment as a matter of law. *See, e.g., Coombs v. Curnow*, 148 Idaho 129, 219 P.3d 453, 461 (2009) ("When considering whether to grant a motion for [judgment notwithstanding the verdict], courts are bound by the record submitted to the jury.").

■ Moreover, it is undisputed that the accident occurred at night, and the jury heard testimony that Lembach qualified as legally blind due to the deteriorating vision caused by his cataracts. This Court previously recognized that land possessors may owe a greater duty of care to individuals who may stand a greater risk to harm, such as children. *Machado*, 61 V.I. at 388 & n.6 (collecting cases). In today's society, it is eminently foreseeable that a person with limited or no vision might attend an event that is open to the public, and that such an individual may injure himself if he must cross a bridge that lacks a sufficient protective barrier, particularly when he must walk across it at night. *See Argo v. Goodstein*, 438 Pa. 468, 265 A.2d 783, 788 (1970) (noting in the context of contributory negligence that "[a] blind person is not bound to discover *everything* which a person of normal vision would" (quoting *Davis v. Feinstein*, 370 Pa. 449, 88 A.2d 695, 696 (1952))); *Capital Metropolitan Transp. Auth. v. Bartel*, No. 03-98-00372-CV, 1999 Tex. App. LEXIS 2390, at *15 (Tex. App. Apr. 1, 1999) (unpublished) (rejecting argument that it was not foreseeable that a blind or elderly person would be injured by the placement of a bus stop sign in the middle of a sidewalk); *accord* 10 V.I.C. § 151(a) ("It is the policy of this Territory to . . . encourage and enable blind persons to participate fully in the social and economic life of the Territory."); 10 V.I.C. § 152(a) ("Blind persons have the same right as persons who are not blind to the full and free use of the streets, highways, sidewalks, walkways, public buildings, public facilities, public beaches, and other public places.").[3]

■ ■ As to causation, Antilles School maintains that the evidence introduced at trial established that Lembach's "own conduct was the

---

[3] Antilles School also argues that it "had no reason to foresee that the walkway presented an unreasonable risk of harm" because "the campus was inspected 'inside and out' . . . , the bridge was used as a walkway by hundreds of students every day, and for hundreds of campus events for the general public, and there had never been a fall over the wall on the walkway bridge in the eleven years it existed, day or night." (Appellant's Br. 11.) This argument lacks merit, since it ignores that evidence was introduced at trial that Lembach possessed greatly limited vision due to his cataracts, and thus could not perceive the danger in the same manner as an able-bodied person. Moreover, if all of the evidence is viewed in the light most favorable to Lembach — as we must when considering Antilles School's challenge to the sufficiency of the evidence — the fact that Antilles School campus had been "inspected 'inside and out' " for years prior to Lembach's fall could support a finding that Antilles School possessed constructive notice of a dangerous condition, yet did nothing to remedy it. *Perez v. Ritz-Carlton (V.I.) Inc.*, 59 V.I. 522, 531 (V.I. 2013).

proximate cause of the incident" because he "admitted he could not see where he was going, proceeded alone, became disoriented, and did not stop, ask for help, or use his cell phone." (Appellant's Br. 15.) However, under Virgin Islands law, "[i]n any action based upon negligence to recover for injury to person or property, the contributory negligence of the plaintiff shall not bar a recovery, but the damages shall be diminished by the trier of fact in proportion to the amount of negligence attributable to the plaintiff." 5 V.I.C. § 1451(a). In this case, the jury apparently concluded that both Antilles School and Lembach were negligent, in that it returned a verdict in favor of Lembach and, on its verdict form, attributed 80 percent causal negligence to Antilles School and 20 percent causal negligence to Lembach. Therefore, because Mackay's testimony indicated that the bridge should have been guarded by a higher barrier, and the issue of Lembach's own negligence was a question for the jury under section 1451(a), Antilles School failed to meet its burden of demonstrating that the evidence introduced at trial was so lacking as to warrant the extreme remedy of setting aside the jury's verdict.[4] *Chestnut*, 59 V.I. at 475.

## C. Duplicative Jury Instructions

Antilles School also argues that the Superior Court erred by separately instructing the jury on negligence and premises liability. As it did in its written objection to the Superior Court's draft jury instructions, Antilles School asserts on appeal that the two causes of action were duplicative, since they involved the same parties, the same conduct, and there same injury.

---

[4] In its brief, Antilles School further states that the Superior Court erred by failing to grant its motion for a new trial on the grounds that "the verdict was against the clear weight of the evidence . . . presented at trial as a whole." (Appellant's Br. 16.) However, in a civil case, "the weight of the evidence is an argument to the factfinder, not a ground for reversal on appeal," and "[t]hus the [trial] court's denial of a new-trial motion that was based on the weight of the evidence is generally unreviewable" except "to the extent that the contention is that the [trial] court applied the wrong legal standard." *Elyse v. Bridgeside Inc.*, 367 Fed. Appx. 266, 268 (2d Cir. 2010) (collecting cases). In its April 8, 2015 opinion, the Superior Court correctly identified Superior Court Rule 50 as the standard governing a new-trial motion based on the weight of the evidence, and denied Antilles School's motion after concluding that the jury's verdict was not against the weight of the evidence. Accordingly, we decline to accept Antilles School's invitation for this Court to re-weigh the evidence on appeal.

 We agree that Lembach's causes of action for negligence and premises liability were duplicative.[5] As Antilles School correctly noted in its objection, "[p]remises liability is a theory of negligence, where the basis of the duty of care is the possession or control of the premises where [an] injury occurred," for "[t]he elements are the same — a plaintiff must prove: (1) duty, (2) breach, (3) causation, and (4) damages." (J.A. 277-78.) This Court reached this same conclusion in *Machado*, in which it analyzed a premises liability claim through the lens of the four elements of negligence. 61 V.I. at 380-81. Consequently, even though Lembach asserted two separate causes of action in his complaint, the Superior Court should have instructed the jury on only a single cause of action: negligence under a premises-liability theory.

 Nevertheless, "[n]o error or defect in any ruling or order or in anything done or omitted by the Superior Court . . . is ground for granting relief or reversal on appeal where its probable impact, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." V.I.S.CT.R. 4(i). As Antilles School itself recognized in its objection before the Superior Court:

> The elements are the same . . . . The facts alleged as to those elements are essentially identical between the two counts. The alleged harm is

---

[5] In its April 8, 2015 opinion denying Antilles School's motion for a new trial, the Superior Court held that negligence and premises liability are separate causes of action because "[o]ur Supreme Court has pointed to two separate sections of the Restatement as reflective of Virgin Islands common law: RESTATEMENT (SECOND) OF TORTS § 281 and RESTATEMENT (SECOND) OF TORTS § 343." (J.A. 102.) To support this claim, the Superior Court cited to two prior footnotes in its opinion in which it concluded that this Court's decision in *White v. Spenceley Realty, LLC*, 53 V.I. 666 (V.I. 2010), adopted section 281 while our decision in *Sealey-Christian v. Sunny Isle Shopping Ctr., Inc.*, 52 V.I. 410 (V.I. 2009), adopted section 343.

In doing so, the Superior Court misinterpreted our precedents. We have acknowledged that decisions of this Court issued prior to this Court's acknowledgement of the implicit repeal of former 1 V.I.C. § 4 — which had mandated reliance on the Restatements — should not be "blindly follow[ed]" if they "were predicated solely on 1 V.I.C. § 4." *Connor*, 60 V.I. at 605 n.1. *Sealey-Christian* and *White* are both such decisions, where sections 281 and 343 were applied solely by virtue of former 1 V.I.C. § 4. *White*, 53 V.I. at 673 & n.3; *Sealey-Christian*, 52 V.I. at 424 n.10. Importantly, the *Sealey-Christian* and *White* decisions both relied on the distinctions between invitees, licensees, and trespassers that this Court subsequently overruled in *Machado*. Significantly, the Superior Court had the benefit of our decisions in *Connor* and *Machado* for, respectively, a year and seven months by the time it issued its April 8, 2015 opinion.

. the same. The elements required to succeed are the same. As such, the premises liability claim is duplicative of the negligence claim.

(J.A. 277-78.) Instructing the jury twice on the same issue, "whether identical in language or merely in similar form," while "erroneous," is nevertheless harmless error that does not require reversal. *Holmes v. J.C. Penney Co.*, 382 S.W.2d 472, 473 (Tex. 1964).

In a departure from its position at trial, Antilles School argues in its appellate brief that the duplicative instructions may have confused the jury. Specifically, Antilles School now maintains that general references to the elements of ordinary negligence could have led the jury to render a verdict in favor of Lembach on a ground other than the premises-liability theory pursued at trial. For example, Antilles School speculates that the jury, "[i]n light of the evidence about [Lembach]'s severe vision and cognitive problems," may have impermissibly concluded "that Antilles School had a duty to act with reasonable care to 'protect' [Lembach]" based on "some additional responsibility [owed] to [Lembach] beyond that of a premises owner." (Appellant's Br. 39.)

 We question whether the jury could have, in light of all of the evidence in the record, concluded that Antilles School was not liable on a premises-liability theory of negligence, but liable under a different theory of negligence that was neither argued by Lembach nor supported by the evidence introduced at trial. Nevertheless, it would have been easy to determine the basis for the jury's verdict if the verdict form permitted the jury to state whether it was finding Antilles School liable for premises liability or ordinary negligence. The record, however, reflects that the Superior Court proposed a verdict form that would have required the jury to make separate findings on premises liability and ordinary negligence, only for Antilles School to request that the verdict form be changed to only provide for a single question on Antilles School's liability. Consequently, Antilles School's own request that the Superior Court change its proposed verdict form has made it effectively impossible for this Court to address its claim that it was prejudiced by the Superior Court's duplicative jury instruction, thus providing us with little choice but to affirm. *Accord Williams v. People*, 59 V.I. 1024, 1033 (V.I. 2013) (collecting cases). Accordingly, because Antilles School's own conduct makes it impossible to review this issue, we conclude that the Superior Court's error in providing the jury with a duplicative instruction did not harm Antilles School's substantial rights so as to warrant a new trial.

## D. Expert Testimony

Antilles School contends that the Superior Court abused its discretion when it permitted Mackay to testify as an expert witness at trial. In doing so, Antilles School renews the argument made in its pre-trial motion that Mackay should not have qualified as an expert because she failed to articulate the methodology used to arrive at her opinion.

### 1. *Standard for Expert Testimony in Virgin Islands Courts*

█ Before reaching the merits of Antilles School's claim, we must ascertain the legal standard that governs admission of expert testimony in proceedings in the Superior Court of the Virgin Islands. On April 7, 2010, the Governor signed Act No. 7161 into law, of which section 15 reads, in pertinent part, that "Title 5, Virgin Islands Code, chapter 67, Admissibility of Evidence, Uniform Rules of Evidence, is hereby repealed and replaced with the Federal Rules of Evidence, Pub. L. [No.] 93-595, § 1, January 2, 1975, 88 Stat. 1926, and all subsequent amendments thereto." Act No. § 7161, § 15(b) (V.I. Reg. Sess. 2010). Both this Court and the Superior Court have questioned whether the legislature may delegate its lawmaking authority to Congress and the United States Supreme Court in such a way. *See Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 579-580 (V.I. 2015) (collecting cases); *People v. Ventura*, Super. Ct. Crim. No. 76/2012 (STX), 2014 V.I. LEXIS 53, at *22 n.4 (V.I. Super. Ct. July 25, 2014) (unpublished). Nevertheless, precedents from this Court establishing judicial procedures are binding on the Superior Court, *see Vanterpool*, 63 V.I. at 576 (citing *Sweeney v. Ombres*, 60 V.I. 438, 442 (V.I. 2014)), and this Court has already adopted the same standard as Federal Rule of Evidence 702, which provides that

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

*Alexander v. People*, 60 V.I. 486, 507 (V.I. 2014) (quoting FED. R. EVID. 702).

In its September 12, 2014 opinion, the Superior Court acknowledged that the standard set forth in Federal Rule of Evidence 702 governed Antilles School's motion to preclude Mackay from testifying as an expert. The Superior Court recognized that the United States Supreme Court, in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), established a standard for admitting expert testimony in federal courts under Rule 702. In that case, the United States Supreme Court instructed the lower federal courts that under Rule 702,

> [a] trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Daubert*, 509 U.S. at 592-93. To determine whether an expert's opinion is based on reliable reasoning or methodology, the United States Supreme Court listed several non-exhaustive factors to consider, including whether the opinion can be (and has been) tested, whether the theory or technique has been subjected to peer review and publication, what the known or potential rate of error is, and the existence and maintenance of standards controlling the technique's operation.[6] *Id.* at 593-94.

The Superior Court, however, declined to apply the *Daubert* factors to this case. In doing so, the Superior Court found "that several of the *Daubert* factors are inapplicable to Mackay's proposed testimony," and that "the *Daubert* factors . . . have not been explicitly applied to evaluate the methodology of a safety engineer." (J.A. 32-33.) In doing so, it relied

---

[6] Although the *Daubert* ruling appeared limited only to scientists providing expert testimony, the United States Supreme Court subsequently held in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-51, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999), that the *Daubert* standard applies to expert testimony from non-scientists as well.

on *Liriano v. Hobart Corp.*, 949 F. Supp. 171 (S.D.N.Y. 1996), for the proposition that "some [c]ourts . . . have even eliminated the application of the *Daubert* factors entirely where an expert's opinion is based solely on personal experience and training rather than on a specific scientific methodology." (J.A. 33.) After considering case law from other jurisdictions, the Superior Court also determined that it is "reasonable and consistent with Virgin Islands public policy to apply the 'general acceptance' standard" adopted by *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), which *Daubert* had expressly overruled for practice in the federal courts.

In its appellate brief, Antilles School states that "the trial court declined to apply the *Daubert* factors," "[i]nstead . . . cited the *Frye* 'general acceptance' test, and one 19-year old case from New York, *Liriano*," and asserts "[t]hat ruling was an error of law." (Appellant's Br. 25.) To support its claim that the Superior Court erred when it failed to apply *Daubert*, Antilles School cites to absolutely no authority, apparently believing that it is self-evident that the Superior Court is bound to follow every pronouncement from the United States Supreme Court, regardless of the context. Surprisingly, Lembach also does not address the issue of the applicable legal standard, apparently because he believes that this Court already adopted the *Daubert* standard in *People v. Todmann*, 53 V.I. 431 (V.I. 2010), and *Suarez v. Gov't of the V.I.*, 56 V.I. 754 (V.I. 2012).

Lembach is correct that this Court cited to *Daubert* in its *Todmann* and *Suarez* decisions. However, neither of these cases interpreted Federal Rule of Evidence 702. Rather, both decisions were controlled by the former 5 V.I.C. § 911, a local statute governing admission of expert testimony that was subsequently repealed by Act No. 7191, because the pertinent evidentiary decisions had been made by the Superior Court prior to repeal of section 911. *Suarez*, 56 V.I. at 761 & n.4 ("[B]ecause Suarez was tried while 5 V.I.C. §§ 771-956 were in force, it is to those sections we turn in this appeal."); *Todmann*, 53 V.I. at 439 ("[A]s 5 V.I.C. § 911(2) represents a law of the Virgin Islands, this Court has no choice but to apply that statute, which reflects the 1953 version of the URE, until such time as the Legislature repeals or amends 5 V.I.C. §§ 771-956."). Significantly, in *Todmann*, this Court cited to *Daubert* for the sole purpose of illustrating that one of the requirements of Federal Rule of Evidence 702 — that the expert testimony assist the trier of fact — that had been omitted from section 911 was "equivalent to a requirement of relevance,"

417

which was already codified in 5 V.I.C. § 777(f). *Todmann*, 53 V.I. at 439-40. Likewise, *Suarez* cited to *Daubert* — and *Todmann* — for this same narrow proposition. *Suarez*, 56 V.I. at 761. And while this Court has cited to *Daubert* in more recent cases for other propositions of law,[7] it has never held that *Daubert* applies in Virgin Islands courts to the exclusion of other approaches. *See Bryan v. Fawkes*, 61 V.I. 201, 224 n.15 (V.I. 2014) ("That this Court acknowledged *Chevron*'s existence by citing to it in an opinion . . . is certainly not evidence that this Court intended to extend *Chevron* to the Virgin Islands."); *Thomas v. V.I. Bd. of Land Use Appeals*, 60 V.I. 579, 591 n.10 (V.I. 2014) (rejecting claim that this Court adopted Restatement (Third) of Property: Servitudes in a prior case simply by acknowledging its existence); *accord Walters v. Walters*, 60 V.I. 768, 777 n.11 (V.I. 2014) ("This citation to the Restatement [in a prior case] was not necessary to the result in that case, and therefore was merely dictum."). Consequently, the Superior Court properly acknowledged that *Daubert*'s applicability to the Virgin Islands was an issue of first impression that required analysis.

We also conclude that the Superior Court correctly recognized that it is not bound to mechanically follow every precedent from the United States Supreme Court. Clearly, state and territorial courts must follow, as binding precedent, decisions of the United States Supreme Court that interpret the United States Constitution, federal statutes, and federal treaties. *See Chesapeake & O. Ry. Co. v. Martin*, 283 U.S. 209, 221, 51 S. Ct. 453, 75 L. Ed. 983 (1931). As explained above, the Federal Rules of Evidence do not apply in the Virgin Islands Superior Court because adherence to them has been mandated by Congress or is required by the United States Constitution; on the contrary, Congress, through the Revised Organic Act of 1954, provided that "[t]he rules governing the practice and procedure of the courts established by local law . . . shall be governed by local law or the rules promulgated by those courts." 48 U.S.C. § 1611(c). Consequently, "[a]ny authority the federal rules have over territorial courts is a function of territorial law," not federal law. *In re*

[7] *See, e.g., Hodge v. Bluebeard's Castle*, 62 V.I. 671, 694 (V.I. 2015) (explaining that *Daubert* did not apply when *Daubert* procedure was contrary to a specific Virgin Islands statute); *V.I. Waste Mgmt. Auth. v. Bovoni Invs., LLC*, 61 V.I. 355, 370-71 (V.I. 2014) (holding challenge to admission of expert testimony predicated on *Daubert* was waived for purposes of appeal as no objection had been made at trial); *Alexander*, 60 V.I. at 506 n.7 (noting that the appellant had cited to a case as authority that had been subsequently overruled by *Daubert*).

*Richards*, 213 F.3d 773, 787 n.4, 42 V.I. 469 (3d Cir. 2000). As such, even though "the Legislature enacted each and every one of the Federal Rules of Evidence as the evidentiary rules for the Virgin Islands local courts without qualification," *Simmonds v. People*, 59 V.I. 480, 500 (V.I. 2013), neither this Court nor the Superior Court is required to follow the United States Supreme Court's interpretation of the Federal Rules of Evidence as binding precedent, since the interpretation of Virgin Islands evidentiary rules remains a question of Virgin Islands law even if the local rule that has been adopted is word-for-word identical to a federal rule. *See Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 430 (Tenn. 2011) (refusing to follow United States Supreme Court's interpretation of Federal Rule of Civil Procedure 12(b)(6) in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), even though the language of "the state and federal rules are identical") (citing *Harris v. Chern*, 33 S.W.3d 741, 745 n.2 (Tenn. 2000)); *Madrid v. Village of Chama*, 2012-NMCA-071, 283 P.3d 871, 876 (N.M. Ct. App. 2012) (same); *State v. Fuller*, 374 N.W.2d 722, 727 (Minn. 1985) ("[A] decision of the United States Supreme Court interpreting a comparable provision of the federal constitution that . . . is textually identical to a provision of our constitution, is of inherently persuasive, although not necessarily compelling, force.").

 ██ We recognize that, in prior cases, this Court has held that "where a Virgin Islands statute is patterned after a statute from another jurisdiction, the borrowed statute shall be construed to mean what the highest court from the borrowed statute's jurisdiction, prior to the Virgin Islands enactment, construed the statute to mean." *Boynes v. Trans. Servs. of St. John*, 60 V.I. 453, 466 n.11 (V.I. 2014) (quoting *Rodriguez v. Bureau of Corr.*, 58 V.I. 367, 380 (V.I. 2013)). But as the Superior Court succinctly explained in another case,

> Unlike borrowed statutes — which presume that the legislature of the borrowing jurisdiction is aware of and intends to adopt the interpretations of the borrowed statute by the highest court of the jurisdiction from which it is taken — borrowed rules are generally not construed the same. In other words, courts do not state that borrowed rules incorporate the construction given them by the highest court of [the] jurisdiction from which they were borrowed. Instead, courts typically

view such earlier constructions of borrowed rules as [being] persuasive, not mandatory.

*Ventura*, 2014 V.I. LEXIS 53, at *55-56 (collecting cases) (citation omitted). In other words, the purpose of the borrowed-statute doctrine is to predict what the Legislature intended when it enacted a substantive law. *V.I. Gov't Hosps. & Health Facilities Corp. v. Gov't of the V.I.*, 47 V.I. 430, 441-42 & n.11 (V.I. Super. Ct. 2006) (citing *Berkeley v. West Indies Enterprises, Inc.*, 480 F.2d 1088, 1092, 10 V.I. 619 (3d Cir. 1973)). However, "[r]ules of evidence are generally considered procedural, not substantive," and, as explained above, "Congress granted both the Legislature and local courts the power to promulgate procedural rules." *Phillips v. People*, 51 V.I. 258, 275 (V.I. 2009). Consequently, when the Legislature promulgates a rule governing court procedure — an area over which the Virgin Islands Judiciary has been vested with concurrent authority under the Revised Organic Act— this Court possesses no obligation to effectuate the Legislature's intent. *Accord Hickson v. State*, 316 Ark. 783, 875 S.W.2d 492, 493 (1994) ("Statutes are given deference only to the extent that they are compatible with our rules, and conflicts which compromise those rules are resolved with our rules remaining supreme.").

▪ Nevertheless, while the Superior Court was not required to follow *Daubert*, we conclude that the *Daubert* standard represents the soundest rule for the Virgin Islands. In the 22 years since the United States Supreme Court issued *Daubert*, the overwhelming majority of state courts voluntarily abolished the *Frye* standard in favor of *Daubert*.[8] *See* 29 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE

---

[8] Today, it appears that only California, Illinois, Minnesota, New Jersey, New York, Pennsylvania, and Washington continue to follow the *Frye* standard. *See People v. Lucas*, 60 Cal. 4th 153, 177 Cal. Rptr. 3d 378, 333 P.3d 587, 662 n.36 (2014); *People v. McKown*, 226 Ill. 2d 245, 875 N.E.2d 1029, 1034 (2007); *Goeb v. Tharaldson*, 615 N.W.2d 800, 810, 814 (Minn. 2010); *State v. Harvey*, 151 N.J. 117, 699 A.2d 596, 621 (1997); *Cornell v 360 West 51st Street Realty, LLC*, 22 N.Y.3d 762, 986 N.Y.S.2d 389, 9 N.E.3d 884, 896-98 & n.11 (2014); *Grady v. Frito-Lay, Inc.*, 576 Pa. 546, 839 A.2d 1038, 1044 (2003); *Anderson v. Akzo Nobel Coatings, Inc.*, 172 Wn.2d 593, 260 P.3d 857, 861 (2011). Maryland, however, although previously adopting *Frye*, "has not rejected the *Daubert* standard, leaving to case-by-case development whether and to what extent *Daubert* may apply [t]here." *Smith v. State*, 388 Md. 468, 880 A.2d 288, 304 n.12 (2005). Most recently, two states whose courts continued to apply *Frye* — Kansas and Florida — have enacted legislation to replace *Frye* with *Daubert*. *See Hernandez v. State*, 180 So. 3d 978 (Fla. 2015) (discussing FLA. STAT. § 90.702, adopted in 2013).

AND PROCEDURE § 6266 (1997) (collecting cases). Although "application of the *Daubert* approach to exclude evidence has been criticized as a misappropriation of the jury's responsibilities," *Bunting v. Jamieson*, 984 P.2d 467, 472 (Wyo. 1999), and for "necessitat[ing] that trial judges be 'amateur scientists,' " *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 597 S.E.2d 674, 691 (2004) (quoting *Goeb v. Tharaldson*, 615 N.W.2d 800, 812-13 (Minn. 2000)), we conclude that the *Frye* standard is even more problematic, since it is "unduly conservative" and the requirement of general acceptance ignores the historical truth "that scientific pioneers and dissenters are occasionally right." *State v. Porter*, 241 Conn. 57, 698 A.2d 739, 749-50 (1997). Importantly, while strict adherence to the *Daubert* framework may result in relevant expert testimony being wrongfully excluded, the *Frye* standard poses an even greater risk of evidence being unjustly excluded, since it may be "easily manipulated by courts when deciding whether or not to admit certain evidence" due to "[t]he lack of a definitional framework for [the key concepts under that test of] 'field' and 'general acceptance.' " *State v. Coon*, 974 P.2d 386, 397 (Alaska 1999). Consequently, we join the vast majority of jurisdictions in holding that the more liberal *Daubert* standard should govern the admission of expert testimony in the Virgin Islands.

### 2. *Mackay's Expert Testimony*

■ Having determined that *Daubert* should have guided the Superior Court's inquiry, we now turn to the admissibility of the expert testimony in this case under that reliability standard. The gravamen of Antilles School's claim is that the Superior Court erred in allowing Mackay to provide any testimony because she failed to articulate a methodology for arriving at her conclusion that a bridge with a drop-off of more than 48 inches requires a protective barrier of at least 42 inches in height.[9]

---

[9] Antilles School also argues that the Superior Court erred when it construed its post-trial motion for a new trial as an untimely motion for reconsideration. Pursuant to Superior Court Rule 36(b), post-trial motions may be filed up to "thirty (30) days from final judgment, except with respect to [a motion under] Rule 50." Moreover, "the common law confers trial courts with the discretion to revise any interlocutory order at any time prior to entry of a final judgment." *Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 609 (V.I. 2012). Because the Superior Court had not yet issued a judgment memorializing the jury's verdict, Antilles School's post-trial motion was clearly timely, and the Superior Court committed error by construing it as a motion for reconsideration for the sole purpose of denying it as untimely.

Because Antilles School attacks the Superior Court's decision to admit Mackay's testimony primarily on the reliability of the method used to reach her conclusion, this Court need only to consider whether Mackay's determination that the bridge was a hazard was based on reliable principles.[10] In her expert report, Mackay stated that she came to the conclusion based on her knowledge of the International Building Code, the National Fire Protection Life Safety Code, the Occupational Safety and Health Administration regulations, the National Safety Council Accident Prevention Manual, and the Encyclopedia of Occupational Health and Safety. From these sources, she concluded that the general rule is that there should be a 42-inch barrier to prevent people from falling over a drop-off of 48 inches or more.

In its September 12, 2014 opinion, the Superior Court determined that the various safety codes cited by Mackay "do not define the standard of care owed in the Virgin Islands" and any reference to them was "substantially outweighed by the danger of a confusion of the issues or misleading the jury." (J.A. 28.) The Superior Court determined that Mackay was permitted to "base some of her opinions concerning the safety of the bridge based on her knowledge of the various safety codes as well as her training and experience under Rule[s] 703 and 704, [but] any testimony by Mackay in reference to these safety codes [was] inadmissible unless raised on cross-examination by the defense." (J.A. 28-29.)

---

*See Rivera-Moreno v. Gov't of the V.I.,* 61 V.I. 279, 298 (V.I. 2014). However, because we consider the correctness of the Superior Court's September 12, 2014 opinion on the merits as part of this appeal, the Superior Court's denial of Antilles School's post-trial motion as untimely is harmless.

[10] In addition to the methodology argument, Antilles School alleges that Mackay's testimony about the need for a 42-inch barrier also could not have assisted the trier of fact because "Mackay offered no opinion that a 42 [inch] barrier would have prevented [Lembach]'s fall." (Appellant's Br. 26.) However, Mackay testified that

> If there's a drop of more than 48 inches, somebody could fall over and get hurt, and that should really be guarded, mitigated by a device that's at least 42 inches high. It can be guarded in a variety of ways to *prevent somebody from falling more than 48 inches and getting hurt.*

(J.A. 672 (emphasis added).) While Mackay did not mention Lembach by name, it is implicit from this statement that she believed that a 42-inch barrier would have prevented him from falling off of the bridge.

We conclude that the Superior Court committed error by preventing Mackay from testifying with reference to these various safety codes. The Superior Court excluded this portion of Mackay's testimony because those codes "do not define the standard of care owed in the Virgin Islands" since they have not been adopted by the Virgin Islands Legislature. (J.A. 28.) In doing so, the Superior Court relied on the decision in *Saldana v. Kmart Corp.*, 260 F.3d 228, 43 V.I. 361 (3d Cir. 2001), which held that expert testimony relying on Occupational Safety and Health Administration regulations was inadmissible in a case where a non-employee plaintiff had sued to recover for a slip-and-fall. *Id.* at 233 (discussing testimony by the same expert who testified in the present case).

The Superior Court's reliance on *Saldana* is significantly misplaced. As noted earlier, "the foundational elements of negligence" are "(1) a legal duty of care to the plaintiff, (2) a breach of that duty of care by the defendant (3) constituting the factual and legal cause of (4) damages to the plaintiff." *Machado*, 61 V.I. at 380. However, some Virgin Islands courts have recognized additional theories upon which a negligence cause of action may proceed. One of these is a cause of action for negligence *per se. See, e.g., Alleyne v. Diageo USVI, Inc.*, 63 V.I. 384, 402 (V.I. Super. Ct. 2015); *Louis v. Caneel Bay, Inc.*, 50 V.I. 7, 15 (V.I. Super. Ct. 2008). A plaintiff suing for negligence *per se* relies on the doctrine that obviates the normal showings of the duty and breach-of-duty elements of an ordinary negligence claim by relying on the defendant's violation of a statute or other legally-binding regulation; that is, the plaintiff must demonstrate that the defendant had a duty to follow the law, failed to follow the law, and that such failure caused damages to the plaintiff as a person within the class intended to be protected by the statute or regulation. *Alleyne*, 63 V.I. at 402; *Martinez v. Angel Exploration, LLC*, 798 F.3d 968, 974 (10th Cir. 2015).

In *Saldana*, the United States Court of Appeals for the Third Circuit clearly construed the plaintiff's complaint as asserting a cause of action for negligence *per se*, rather than ordinary negligence, premised on the defendant's violation of certain Occupational Safety and Health Administration regulations that the court concluded were not legally-binding as to that nonemployee plaintiff. *Saldana*, 260 F.3d at 233 ("These conclusory statements essentially attempt to force upon [the defendant] a *strict liability standard* based on [the expert]'s reading of

OSHA." (emphasis added)). Had Lembach asserted a negligence *per se* cause of action against Antilles School, the Superior Court would have likely been justified in relying on *Saldana* to prevent Mackay from testifying to Occupational Safety and Health Administration regulations, the International Building Code, and other authorities. In fact, the Third Circuit has itself held, where a plaintiff brought an ordinary negligence claim rather than one for negligence *per se*, that Occupational Safety and Health Administration regulations are admissible through expert testimony to determine the standard of care owed by the defendant:

> We turn now to plaintiff's attack on the court's *in limine* ruling precluding plaintiff from offering evidence through an expert witness as to the OSHA standard of care allegedly relevant to the logging operation here involved. Although no opinion was filed, we think the district court's ruling was based on its view that OSHA is limited to employees of an employer and since plaintiff was not an employee of Kane, the OSHA regulation was inapplicable to him. We so infer from the court's colloquy with counsel.
>
> . . . .
>
> The issue to be decided here is whether the OSHA regulation is admissible in a diversity action as evidence of the standard of care owed by the defendants to the plaintiff, not whether the OSHA itself controls that issue. Since the question involves the admission of evidence in a federal court, the Federal Rules of Evidence control. We do not understand the parties to contend otherwise. Thus, our review of the trial court's order excluding the evidence is for abuse of discretion. *Savarese v. Agriss*, 883 F.2d 1194, 1200 (3d Cir. 1989).
>
> We can think of no reason under the Federal Rules of Evidence why the OSHA regulation is not relevant evidence of the standard of care once it is determined, as we have done, that . . . the defendants could owe plaintiff a duty of care. It is important to reiterate that to use the OSHA regulation as evidence here is not to apply the OSHA itself to this case. Rather, it is to "borrow" the OSHA regulation for use as evidence of the standard of care owed to plaintiff.

*Rolick v. Collins Pine Co.*, 975 F.2d 1009, 1013-14 (3d Cir. 1992).

Here, the record clearly reflects that Lembach did not sue Antilles School for negligence *per se*, but under a premises-liability theory of

negligence. It is well established that industry standards are relevant, admissible evidence in ordinary negligence cases, since they are probative of the standard of care. *See, e.g., Poches v. J.J. Newberry Co.*, 549 F.2d 1166, 1168 (8th Cir. 1977) ("The weight of authority holds that violations of industry standards [are] relevant and material on the issues of liability on theories of negligence or strict liability."); *Morello v. Kenco Toyota Lift*, No. 09-4412, 2015 U.S. Dist. LEXIS 39048, at *3 (E.D. Pa. Mar. 26, 2015) (unpublished) ("[I]ndustry standards are admissible evidence in negligence cases."); *Fernandes v. DAR Development Corp.*, 222 N.J. 390, 119 A.3d 878, 886 (2015) ("The standard of care is derived from many sources, including . . . standards adopted by professional organizations."); *Madison v. Babcock Ctr., Inc.*, 371 S.C. 123, 638 S.E.2d 650, 659 (2006) ("The factfinder may consider relevant standards of care from various sources in determining whether a defendant breached a duty owed to an injured person in a negligence case. The standard of care in a given case may be established and defined by the common law, . . . administrative regulations, industry standards, or a defendant's own policies and guidelines."); *Wood v. Smith*, 343 Pa. Super. 547, 495 A.2d 601, 603 (1985) ("[E]vidence of OSHA regulations is admissible as a standard of care, the violation of which is evidence of negligence."). Thus, that the pertinent provisions of the Occupational Safety and Health Administration regulations, the International Building Code, the National Fire Protection Life Safety Code, the National Safety Council Accident Prevention Manual, and the Encyclopedia of Occupational Health and Safety have not been adopted as statutes by the Virgin Islands Legislature does not render them inadmissible with respect to determining the standard of care that Antilles School owed to Lembach. *Considine v. City of Waterbury*, 279 Conn. 830, 905 A.2d 70, 92 (2006) (holding that evidence relating to provisions of a building code that did not technically apply to the defendant's building was admissible to establish the appropriate standard of care "because it reflects the experience and expertise of what authorities believe to be the safe use" of features in a building or structure).

The fact that Mackay did not cite to specific portions of these codes and standards in her expert report does not provide an alternate basis for the Superior Court's decision to exclude this portion of her testimony. Numerous courts have held that an expert witness's methodology is not unreliable simply because the witness uses

generalities rather than citing to specific provisions. *See, e.g., Arnold v. Thomas Trucking Co.*, 2005 U.S. Dist. LEXIS 34015, at *8 (S.D. Ala. Apr. 15, 2005) (unpublished) (expert witness not required to "provide cites to specific code sections on command," but may "describe, using generalities, the requirements of the [regulations]"); *Jackson v. Colvin*, No. 4:12CV0933 TCM, 2013 U.S. Dist. LEXIS 134041 (E.D. Mo. Sept. 19, 2013) (unpublished) (expert's failure to cite specific codes does not undermine the "ALJ's reliance on the [vocational expert's] testimony"); *Stang v. ThreeQuarters LLC*, 2009 Minn. App. Unpub. LEXIS 1111 (Minn. Ct. App. Oct. 6, 2009) (unpublished) (accepting expert witness's reliance on the Uniform Building Code even though "the expert does not cite the specific code provision"); *Terry v. Ottawa C'nty Bd. of Mental Retardation & Developmental Delay*, 165 Ohio App. 3d 638, 2006 Ohio 866, 847 N.E.2d 1246, 1257 (2006), *aff'd in part and rev'd in part on other grounds*, 115 Ohio St. 3d 351, 2007 Ohio 5023, 875 N.E.2d 72 (2007) (rejecting argument that expert witness, at the *Daubert* hearing, pre-trial motion stage, is required to cite to specific literature). Moreover, had Antilles School requested a hearing on its motion,[11] it could have cross-examined Mackay to determine the extent of her knowledge, including asking her to pinpoint which specific provisions of these codes supported her claims.

 Under these circumstances, Mackay's expert testimony cannot provide a basis for reversal. Although Antilles School argues that it lacked the opportunity to cross-examine Mackay at trial as to the specific various codes, this was a problem of Antilles School's own making; had Antilles

---

[11] We note that in this case, although Antilles School filed a motion to exclude Mackay's expert testimony, it "never made a request for a *Daubert* hearing to challenge [her] methodology," which this Court has previously indicated may result in the *Daubert* issue being "deemed waived for purposes of appeal." *V.I. Waste Mgmt. Auth.*, 61 V.I. at 371 (quoting V.I.S.CT.R. 22(m)). This is because "it is particularly important that the side trying to defend the admission of evidence be given an adequate chance to do so," *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 739 (3d Cir. 1994), especially in the context of a *Daubert* motion, where a hearing may provide the party seeking to introduce expert testimony with "an opportunity to respond to the court's concerns." *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999) (quoting *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1240 (3d Cir. 1993)). However, in his opposition to Antilles School's motion, Lembach stated that Mackay's opinion "exceeds the required *Daubert* standard so that an *in limine* hearing is not even needed." (J.A. 223.) Since both parties essentially stipulated to the Superior Court resolving Antilles School's motion based on the existing record without holding a hearing, any error in this regard is harmless.

School not filed its motion to exclude any specific references to these standards, Mackay would almost certainly have cited to those authorities during her trial testimony rather than speaking in generalities — as she was required to do to comply with the Superior Court's September 12, 2014 opinion — and been subject to cross-examination. It is only because the Superior Court granted Antilles School's motion that the jury was not provided with this information during trial, which should have laid to rest any concerns with respect to the methodological basis for her conclusions. Significantly, the jury issued its verdict despite Antilles School introducing rebuttal testimony to the effect that the bridge was not in violation of any code or regulation and that there had never been a prior incident resulting in injury on the bridge. There was also evidence that the building plans had been approved by the Department of Planning and Natural Resources, and that the site had passed prior safety inspections. Therefore, the jury could have credited testimony that Antilles School was in full compliance with all regulations. Because all other testimony in this case suggests that the bridge was not unsafe or unduly hazardous, it would follow that Mackay's testimony was the sole evidence that Antilles School breached its duty to maintain the most basic level of safety in regards to maintaining the bridge. Therefore, we conclude that any error with respect to Mackay's testimony actually favored Antilles School, and cannot form a basis for disturbing the jury's verdict.[12]

### E. Remittitur

Finally, Antilles School contends that the Superior Court erred when it denied its request for remittitur. Remittitur is a common-law doctrine in which a court will reduce the damages award indicated in a jury verdict after concluding that "no rational jury, acting on the basis of the full evidentiary record, and without being inflamed by passion or prejudice or other improper consideration, could have awarded such a large sum as damages." *Thomas Hyll Funeral Home, Inc. v. Bradford*, 233 F. Supp. 2d 704, 710 (D.V.I. App. Div. 2002) (quoting *Henry v. Hess Oil Virgin*

---

[12] We recognize that Lembach did not take a cross-appeal from the Superior Court's September 12, 2014 opinion. However, as the United States Supreme Court has recently recognized, an appellee may defend a judgment on any alternative ground without taking a cross-appeal. *Jennings v. Stephens*, ___ U.S. ___, 135 S. Ct. 793, 799, 190 L. Ed. 2d 662 (2015).

*Islands Corp.*, 163 F.R.D. 237, 243, 33 V.I. 163 (D.V.I. 1995)). Under remittitur procedure, "the plaintiff would have the option between accepting the remitted amount or submitting to a new trial." *James v. Fitzpatrick*, 25 V.I. 124, 126 (V.I. Super. Ct. 1990).

▮ Remittitur is a procedural device, and thus the authority to recognize it is vested with a jurisdiction's court of last resort. *See, e.g., Payne v. Jones*, 711 F.3d 85, 97 (2d Cir. 2012) ("appropriateness of remittitur" is governed by the jurisdiction's local law); *Fair v. Allen*, 669 F.3d 601 (5th Cir. 2012) (same). *See Gasperini v. Center for Humanities*, 518 U.S. 415, 419, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996). As Antilles School correctly recognizes, this Court has not yet determined whether remittitur should be recognized in the Virgin Islands. "[T]his Court has established a three-part analysis for the Superior Court to apply to resolve issues of first impression in Virgin Islands common law." *Hamed v. Hamed*, 63 V.I. 529, 535 (V.I. 2015). Under this approach, the Superior Court must consider "three non-dispositive factors" based on the framework this Court first established in *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011): "(1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands." *Gov't of the V.I. v. Connor*, 60 V.I. 597, 600 (V.I. 2014) (quoting *Simon v. Joseph*, 59 V.I. 611, 623 (V.I. 2013)).

▮ Contrary to this Court's precedents, the Superior Court failed to conduct a *Banks* analysis to determine either (1) whether remittitur is cognizable in the Virgin Islands, or (2) if it is, what legal standard governs a remittitur motion. Surprisingly, Antilles School offers what could charitably be described as a cursory *Banks* analysis, with virtually no analysis of the third — and most important — factor.[13] Although this

---

[13] In its February 26, 2015 opinion addressing the jury's inconsistent contributory negligence findings, the Superior Court stated that "only the Superior Court is required to conduct [a] *Banks* analys[i]s," and that the parties only possess an obligation to "cit[e] to binding authority when faced with questions of law that lack precedent." (J.A. 55-56.) However, there is absolutely no basis in any of this Court's precedents for the proposition that attorneys are not required to fully brief all questions of law relevant to the issues that are being litigated, including all three *Banks* factors. On the contrary, this Court has previously required parties to file supplemental briefs specifically analyzing the *Banks* factors. *See, e.g., Matthew v. Herman*, 56 V.I. 674, 681 (V.I. 2012).

Court has previously held that the failure of the Superior Court to conduct a *Banks* analysis when one is required is grounds for summary reversal, *Connor*, 60 V.I. at 604, in this case, all issues have been resolved except for remittitur. Consequently, to expedite a final decision in this case, and in the interest of promoting judicial economy, we accept Antilles School's invitation to determine "whether remittitur . . . is necessary in light of factors to be crystallized by this Court." (Appellant's Br. 41.)

As to the first *Banks* factor, the United States District Court of the Virgin Islands has frequently made use of remittitur. *See, e.g., Feuerstein v. Simpson*, No. 04-134, 2013 U.S. Dist. LEXIS 140182, at *3 (D.V.I. Sept. 30, 2013) (unpublished); *Smith v. Katz*, No. 2010-39, 2013 U.S. Dist. LEXIS 40804, at *5 (D.V.I. Mar. 22, 2013) (unpublished); *Thomas Hyll Funeral Home, Inc.*, 233 F. Supp. 2d at 710 (citing *Henry*, 163 F.R.D. at 243); *Marrero v. United Indus., Svc. Transp., Prof. & Gov't Workers of N. Am.*, No. 2008-92, 2012 U.S. Dist. LEXIS 4156, at *3-4 (D.V.I. Jan. 13, 2012) (unpublished). "[F]ederal courts in the Virgin Islands have relied on factors identified by the Pennsylvania Superior Court in determining whether a verdict is excessive in light of the evidence."[14] *Feuerstein*, 2013 U.S. Dist. LEXIS 140182, at *4 n.3 (citing

---

Pursuant to Supreme Court Rule 22(m), "[i]ssues that were . . . only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal." When — as is the case here — the appellant recognizes that a *Banks* analysis is required, yet fails to even remotely attempt to brief the three *Banks* factors, Rule 22(m) provides this Court with the discretion to deem the issue waived. However, because the Superior Court's February 26, 2015 opinion may have misled Antilles School into believing that it was inappropriate for it to fully brief the *Banks* issue, we will nevertheless consider Antilles School's remittitur argument on appeal. Members of the Virgin Islands Bar, however, must be cognizant of their responsibility to serve as advocates for their clients, which includes making all necessary legal arguments, including a non-perfunctory analysis of all three *Banks* factors when one is required.

[14] It is not clear from *Feuerstein* and other United States District Court decisions why the District Court chose to extend a test adopted by Pennsylvania's intermediate appellate court to the Virgin Islands. We further note that the sixth factor in this test, "the amount of compensation demanded in the original complaint," appears to be incompatible with Virgin Islands statutory law. *See* 5 V.I.C. § 5 ("Notwithstanding any provision of law, in any cause of action based on tort, contract law, or otherwise to recover damages for injury or death to the person or for harm to the plaintiff resulting from the defendant's wrongful conduct, *no complaint or cross-complaint shall specify the amount of damages* but shall contain a prayer for general relief and shall state that the damages are within the jurisdictional limits of the court to which the pleading is addressed. Nothing in this section shall be construed as preventing a party from asking for a specific amount of damages at the trial." (emphasis added)).

*Brown v. McBro Planning & Dev. Co.*, 660 F. Supp. 1333, 1338, 23 V.I. 242 (D.V.I. 1987)). The factors considered are: "(1) the severity of the injury; (2) whether the injury is manifested by objective physical evidence or whether it is only revealed by the subjective testimony; (3) whether the injury is permanent; (4) whether the plaintiff can continue with his or her employment; (5) the size of the out-of-pocket expenses; and (6) the amount of compensation demanded in the original complaint." *Id.* (quoting *Lawler v. Laidlaw Carriers Flatbed GP, Inc.*, 875 F. Supp. 2d 443, 447 (E.D. Pa. 2012)). "For emotional or non-physical damages, the court evaluates the effects of the incident on the plaintiff and will uphold awards only for long-lasting changes to an individual's mental condition, reputation, or financial situation." *Id.* (citing *Dee v. Borough of Dunmore*, 474 Fed. Appx. 85, 88 (3d Cir. 2012)).

To support its invocation of the remittitur power, the United States District Court of the Virgin Islands has cited to decisions issued by the Third Circuit that establish remittitur as a discretionary power of a trial judge. *See, e.g., Spence v. Bd. of Educ.*, 806 F.2d 1198, 1201 (3d Cir. 1986); *Murray v. Fairbanks Morse*, 610 F.2d 149, 152-53, 16 V.I. 647 (3d Cir. 1979). Ultimately, all of these federal authorities are premised on a federal trial court decision issued in 1822, in which the judge determined that a plaintiff could choose between a new trial or a reduced damages award. *Blunt v. Little*, 3 F. Cas. 760, 762 (C.C.D. Mass. 1822).

With respect to local courts, in the earliest case mentioning remittitur, the Superior Court[15] declined to reduce the judgment because it concluded that doing so would violate the Fifth and Fourteenth Amendments of the United States Constitution because it would be tantamount to "a taking of private property . . . without due process." *Schroeder v. Hackett*, 13 V.I. 242, 246 (V.I. Super. Ct. 1977). In another case, the Superior Court questioned the availability of remittitur, but proceeded to deny the motion on the merits "assuming . . . that such relief is proper in theory." *James*, 25 V.I. at 126. In the very few cases that have considered a remittitur claim on the merits, the courts have based their decision on the same federal authorities that the United States District

---

[15] Prior to 2004, the Superior Court of the Virgin Islands had been known as the Territorial Court of the Virgin Islands. In 2004, the Legislature redesignated the Territorial Court as the Superior Court. 2004 V.I. Sess. Laws 179 (Act No. 6687, § 1(b)). To avoid confusion, we refer to the former Territorial Court by its current name.

Court of the Virgin Islands relied upon. *See, e.g., Matt v. Majestic Constr., Inc.*, Super. Ct. Civ. No. 109/2007 (STT), 2011 V.I. LEXIS 43, at *1-2 (V.I. Super. Ct. July 26, 2011) (unpublished); *Creque v. Cintron*, 17 V.I. 69, 76 (V.I. Super. Ct. 1980).

Today, most states recognize remittitur. David Fink, *Best v. Taylor Machine Works, the Remittitur Doctrine, and the Implications for Tort Reform*, 94 NW. U. L. REV. 227, 235 & n.60 (1999) (collecting cases). Two state supreme courts, however, have abolished remittitur, albeit for slightly different reasons. The Oregon Supreme Court, interpreting a provision of the Oregon Constitution that is similar to the Seventh Amendment of the United States Constitution,[16] held that remittitur infringes on the powers of the jury, in that it permits a judge to weigh the evidence and re-examine the facts of the case. *Van Lom v. Schneiderman*, 187 Ore. 89, 210 P.2d 461, 465 (1949). In other words, the Oregon Supreme Court concluded that it would be inappropriate to permit a court to reduce a jury verdict — and effectively set aside the jury's factual findings without a finding that they were clearly erroneous — "simply because the court thinks that the verdict is too large."[17] *Id.* at 467; *see also Hughes v. PeaceHealth*, 344 Ore. 142, 178 P.3d 225, 232 (2008).

Like the Oregon Supreme Court, the Missouri Supreme Court has also concluded that the remittitur procedure "constitutes an invasion of the jury's function by the trial judge," since it interferes with "a party's right to trial by jury" and constitutes "an assumption of a power to weigh the evidence, a function reserved to the trier(s) of fact." *Firestone v. Crown Ctr. Redev. Corp.*, 693 S.W.2d 99, 110 (Mo. 1985). Additionally, the

---

[16] *Compare*, U.S. CONST. amend. VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."), *with*, OR. CONST. art. VII, § 3 ("In actions at law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict.").

[17] Subsequently, the Oregon Supreme Court established a partial exception to its *Van Lom* precedent in order to comply with a decision from the United States Supreme Court mandating that judicial review of punitive damage awards be available to determine whether they comport with the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Oberg v. Honda Motor Co.*, 320 Ore. 544, 888 P.2d 8, 9-10 (1995) (citing *Honda Motor Co., Ltd. v. Oberg*, 512 U.S. 415, 432, 114 S. Ct. 2331, 129 L. Ed. 2d 336 (1994)). Oregon's ban on remittitur, however, remains in effect for all awards other than punitive damages. *Id.* at 10 n.6.

Missouri Supreme Court emphasized that while remittitur may have once been intended to bring consistency to jury verdicts, its practical application "ha[s] been fraught with confusion and inconsistency." *Id.* For example, in *Firestone*, the Missouri Supreme Court noted that the two cases before it on appeal had been tried in the same county involving the same accident and the same injuries, but had been subject to drastically different remittiturs. *Id.* at 110 n.4. And to the extent that a jury verdict is questionable, a party would still retain the right to move for a new trial on the ground that the evidence does not support the verdict, which, if granted, would permit another jury — rather than a judge acting unilaterally — to resolve the matter.[18] *Id.*

Scholars have also heavily criticized remittitur. Several scholars believe "that remittitur interferes with the Seventh Amendment guarantee against reexamination of facts determined by juries." Sarah M. R. Cravens, *The Brief Demise of Remittitur: The Role of Judges in Shaping Remedies Law*, 42 LOY. L.A. L. REV. 247, 251-52 (2008). Significantly, the United States Supreme Court has never held that remittitur is constitutional under the Seventh Amendment. Rather, in a case in which it concluded that the related concept of additur — increasing the amount of damages awarded by a jury — violated the Seventh Amendment, the United States Supreme Court stated, in dicta, that it would not interfere with remittitur due to its long-standing usage in the federal system, but that "it . . . may be that if the question of remittitur were now before us for the first time, it would be decided otherwise." *Dimick v. Schiedt*, 293 U.S. 474, 484-85, 55 S. Ct. 296, 79 L. Ed. 603 (1935).[19] The abolition of additur in the federal courts — but not the state courts, which are not subject to the Seventh Amendment — has also led to calls for remittitur reform, since plaintiffs have been deprived of a mechanism to challenge verdicts that may be irrationally low in light of the evidence in the record. Irene Deaville Sann, *Remittiturs (and Additurs) in the Federal Courts: An Evaluation With Suggested Alternatives*, 38 CASE W. RES. L. REV. 157,

---

[18] Two years after the Missouri Supreme Court issued its opinion in *Firestone*, the Missouri Legislature enacted a statute that revived the doctrines of remittitur and additur. *Badahman v. Catering St. Louis*, 395 S.W.3d 29, 36 (Mo. 2013).

[19] *But see Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 433 n.16, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996) (suggesting that the *Dimick* dissent may invite constitutionality of additur in the federal courts to be revisited).

218 (1988). In fact, many of the state jurisdictions that recognize remittitur also permit additur. *Id.* at 164 n.25 (collecting cases).

 We conclude that remittitur does not represent the soundest rule for the Virgin Islands. As noted earlier, remittitur, while heavily used in the federal system, has only sporadically been invoked in Superior Court proceedings, and even then has been largely disfavored. Since remittitur has not received widespread acceptance in the Virgin Islands, the burden associated with its abolition would be very minimal. *Banks*, 55 V.I. at 981. Additionally, remittitur is wholly inconsistent with this Court's long-standing jurisprudence that questions of fact should be resolved by a jury, that a jury's factual determinations should be respected so long as there is a sufficient evidentiary basis, and that it is not the role of a judge to weigh the evidence when it has been submitted to a jury for a determination.[20] *See, e.g., Fahie v. People*, 62 V.I. 625, 636 (V.I. 2015); *Joseph v. Hess Oil V.I. Corp.*, 54 V.I. 657, 667 (V.I. 2011).

 We recognize that the majority of United States jurisdictions have adopted remittitur. But as explained above, many of those jurisdictions have tempered remittitur with additur, so that plaintiffs and defendants may both challenge damage awards that they believe are irrational — whether irrationally high, or irrationally low. Although the Seventh Amendment has not been extended to the several States by incorporation through the Fourteenth Amendment, Congress, through the Revised Organic Act, expressly extended the Seventh Amendment to the Virgin Islands. *See* 48 U.S.C. § 1561 ("The following provisions of and amendments to the Constitution of the United States are hereby extended to the Virgin Islands . . . and shall have the same force and effect there as in the United States or in any State of the United States . . . the first to ninth amendments inclusive . . . ."); *Newfound Mgmt. Corp. v. Lewis*, 131 F.3d 108, 114, 37 V.I. 612 (3d Cir. 1997) (holding Seventh Amendment applies to Virgin Islands the same as it does to the United States by virtue of the Revised Organic Act). As a result, this Court — unlike other courts of last resort — cannot recognize both remittitur and additur, for it is likely bound by the United States Supreme Court's *Dimick* decision holding additur unconstitutional under the Seventh

---

[20] *Accord, Supinger v. Stakes*, 255 Va. 198, 495 S.E.2d 813, 814 (1998) (concluding that additur violates the right to a jury trial codified in the Virginia Constitution because it is "[t]he role of a jury," and not a judge, "to settle questions of fact").

Amendment.[21] *Accord Barnard v. Thorstenn*, 489 U.S. 546, 552, 109 S. Ct. 1294, 103 L. Ed. 2d 559 (1989) (applying portion of United States Constitution made applicable to the Virgin Islands through the Revised Organic Act notwithstanding contrary interpretation of same provision by the District Court of the Virgin Islands acting in its former capacity as a local court).

Some scholars contend that remittitur is "not a plenary power to reduce damages, analogous to the sentencing power in criminal cases, but rather an indirect power to threaten a new trial unless the plaintiff accept[s] the reduced judgment." George Fisher, *Plea Bargaining's Triumph*, 109 YALE L.J. 857, 1000 (2000). Because a trial court possesses the authority to grant a new trial based on the weight of the evidence, it has been posited that "remittitur . . . [is] promotive of both the administration of justice and putting an end to litigation." Francis C. Amendola, 65A C.J.S. *New Trial* § 299. In other words, some view remittitur as primarily a court-facilitated settlement procedure in which the court attempts to "allow[ ] both parties to walk away satisfied" by consenting to a reduced verdict in lieu of "a retrial [that] would consume substantial judicial resources." Sean J. Sullivan, *Civil Procedure and Constitutional Law:*

---

[21] The Seventh Amendment of the United States Constitution provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." The United States Supreme Court has interpreted this reference to "the rules of the common law" to be the common law as it existed in England at the time the Seventh Amendment was ratified in 1791. *Dimick*, 293 U.S. at 476. However, while the Seventh Amendment became operative in the federal courts in 1791 by virtue of its original ratification, it was only extended to the Virgin Islands through the 1968 amendments to the Revised Organic Act of 1954. Moreover, prior to its purchase by the United States in 1917, the Virgin Islands had been a colony of Denmark. Because we decline to adopt remittitur, and for largely the same reasons would not adopt additur, we do not address here whether Congress, by incorporating the Seventh Amendment by reference through the 1968 amendments to the Revised Organic Act, intended for this reference to "the common law" to refer to the common law as it existed in 1791, or as it existed in 1968, or to encompass only the common law of England. *See Browning v. Browning*, 9 P. 677, 679-85 (N.M. 1886) (concluding that reference to the "common law" in New Mexico's organic act did not incorporate the common law of England, but the common law that existed prior to New Mexico's admission as a territory, including the civil law of Mexico); *see also Hornbuckle v. Toombs*, 85 U.S. 648, 654-55, 21 L. Ed. 966 (1873) (holding that provision in Montana's organic act providing "that the Constitution, and all laws of the United States which are not locally inapplicable, shall have the same force and effect within the said Territory of Montana as elsewhere in the United States" did not incorporate all laws with "specific application to the courts of the United States" to the territorial courts).

*Changing New Mexico Remittitur Procedure to Protect the Appropriate Balance of Power Between Judge and Jury*, 32 N.M. L. REV. 277, 283 (2002). When viewed through this lens, the unavailability of additur may be rationalized as irrelevant, since a plaintiff may avoid a reduced verdict by simply electing a new trial that the trial court would otherwise be authorized to grant.

As a threshold matter, judicial economy, while important, "is not or at least should not be the overriding goal of our system in resolving disputes." *Allsup's Convenience Stores, Inc. v. North River Ins. Co.*, 1999-NMSC-006, 127 N.M. 1, 976 P.2d 1, 7 (1998). As the New Mexico Supreme Court explained when it declared part of the state's remittitur procedure unconstitutional notwithstanding an argument that remittitur promoted settlement and reduced the number of trials:

> [I]n civil matters like this one, courts exist to resolve disputes between litigants. When a plaintiff claims that he has been injured because of the fault of the defendant, the court proceeding is designed to give the plaintiff a fair opportunity to prove his contentions and to obtain adequate compensation, if he is correct. Conversely, a defendant is afforded a fair chance to meet a plaintiff's contentions head-on. *The interest of courts in efficient administration, though important, is not superior to the interests of the plaintiff or the defendant.*

*Id.* at 7-8 (emphasis in original) (quoting *Donovan v. Penn Shipping Co., Inc.*, 536 F.2d 536, 538 (2d Cir. 1976) (Feinberg, J., dissenting)).

In any case, we disagree that remittitur is necessary to facilitate post-verdict settlements. As noted above, the Superior Court possesses the authority to grant a new trial based on the weight of the evidence. To the extent the costs of a new trial are prohibitive, nothing prevents the parties from simply negotiating their own settlement to avoid the new trial. Moreover, "[a]ppeal, or the threat of appeal, often leads to further [post-verdict] negotiations." Michael J. Saks, *Do We Really Know Anything About the Behavior of the Tort Litigation System — And Why Not?*, 140 U. PA. L. REV. 1147, 1280 (1992). In fact, "[o]ne major study found awards were reduced in 15% of cases and increased in 2-3%" as a result of "agreements between the parties" after a jury verdict. *Id.* (citing MICHAEL G. SHANLEY & MARK A. PETERSON, POSTTRIAL ADJUSTMENTS TO JURY AWARDS 27 (1987)).

Moreover, to the extent remittitur incentivizes the parties to engage in post-verdict settlement negotiations when they otherwise would not, it does so at the barrel of a gun. "The use of a remittitur . . . has a powerful coercive effect upon a plaintiff." *Earl v. Bouchard Transp. Co.*, 917 F.2d 1320, 1329 (2d Cir. 1990) (internal quotation marks and citation omitted). For example, the United States Supreme Court, as well as several state courts of last resort, have adopted a "rule that a plaintiff . . . may not appeal from a remittitur order he has accepted." *Donovan v. Penn Shipping Co.*, 429 U.S. 648, 650, 97 S. Ct. 835, 51 L. Ed. 2d 112 (1977); *Brault v. Flynn*, 166 Vt. 585, 690 A.2d 1365, 1366 (1996) ("[A]n accepted remittitur may not be appealed."); *Deans v. Eastern Maine Medical Center*, 454 A.2d 835, 837 (Me. 1983) ("[A] reduced judgment, entered after a plaintiff has accepted a remittitur rather than suffer the entry of an order for a new trial, is not appealable by that plaintiff."); *Florida East Coast Railway v. Buckles*, 83 Fla. 599, 92 So. 159, 160 (1922) (plaintiff is "estopped" from appealing a remittitur that he has accepted). Thus, absent a statute authorizing such a procedure, a plaintiff may not accept a remittitur "under protest" in order to appeal the remittitur decision, yet avoid the possibility of a new trial in the event the trial court's decision is affirmed. *Moran Travel Bureau, Inc. v. Clair*, 12 Mass. App. Ct. 864, 421 N.E.2d 103, 105 (1981) (citing *Donovan*, 429 U.S. at 649-50). Yet a plaintiff who turns down a remittitur may not, because of the final-judgment rule, appeal until after the second trial has already concluded, thus forcing the plaintiff to incur the costs of the second trial even if the appellate court were to ultimately reverse the trial court's decision to set aside the original verdict. *See, e.g.*, *Seltzner v. RDK Corp.*, 756 F.2d 51, 52 (7th Cir. 1985) ("An order for a new trial is not a final order . . . and since the plaintiff in this case refused to accept the remittitur, the order from which he is appealing . . . is not appealable."). The defendant, however, may appeal even if the plaintiff accepts the remittitur; as such, no matter what the result, "the plaintiff is made worse off and the defendant is made better off relative to the situation where the jury verdict is permitted to stand." *Earl*, 917 F.2d at 1329.

Additionally, the purported benefits of the remittitur procedure do not change the fact that remittitur removes power from a jury and vests it with a judge. As one leading scholar explained in summarizing the sentiments that led to the proposal, and eventual ratification of, the Seventh Amendment:

It is unquestionable, but nonetheless sometimes overlooked, that the general intention of the antifederalist agitation for mandatory jury trial was to achieve results from jury-tried cases that would not be forthcoming from trials conducted by judges alone. Clearly the antifederalists were not arguing for the institution of civil jury trial in the belief that jury trials were short, inexpensive, decorous and productive of the same decisions that judges sitting without juries would produce. The inconveniences of jury trial were accepted precisely because in important instances, through its ability to disregard substantive rules of law, the jury would reach a result that the judge either could not or would not reach. Those who favored the civil jury were not misguided tinkerers with procedural devices; they were, for the day, libertarians who avowed that important areas of protection for litigants in general, and for debtors in particular, would be placed in grave danger unless it were required that juries sit in civil cases.

Charles W. Wolfram, *The Constitutional History of the Seventh Amendment*, 57 MINN. L. REV. 639, 671 (1973). Congress, by extending the Seventh Amendment to the Virgin Islands expressed a strong policy preference for civil cases to be adjudicated by a jury rather than a judge. But remittitur effectively permits a judge to substitute his view of the evidence for that of the jury. *Firestone*, 693 S.W.2d at 110; *Van Lom*, 210 P.2d at 467. This is particularly problematic given the strong coercive effects of the remittitur procedure, in that plaintiffs, and particularly those with limited means, may be forced to accept the reduced award — even if it is itself irrational or unwarranted — simply to avoid the costs of a new trial. *Earl*, 917 F.2d at 1329. "[I]f the remittitur practice forces most plaintiffs to accept, then the . . . system deprives the plaintiff of any real opportunity to challenge the use of remittitur," and as a result "the plaintiff is denied a jury verdict" while simultaneously "prevented from appealing that denial," causing the plaintiff to "be[ ] placed at the mercy of the trial judge." *Allsup's Convenience Stores, Inc.*, 976 P.2d at 7. In other words, in many cases the remittitur procedure will result in a judge having the final word on damages rather than a jury, not because the damages award was legally insufficient or contrary to due process, but "simply because the court thinks that the verdict is too large." *Van Lom*, 210 P.2d at 467.

■■■■ Consequently, we conclude that the best rule is to decline to recognize remittitur, and to permit a jury's verdict to be altered by a judge

only if it is not supported by sufficient evidence in the record, or if a reduction is compelled under the United States Constitution. *See Honda Motor Co., Ltd. v. Oberg*, 512 U.S. 415, 432, 114 S. Ct. 2331, 129 L. Ed. 2d 336 (1994) (holding state courts must establish a procedural mechanism to challenge a jury verdict as unconstitutionally excessive). In this case, Antilles School does not allege that the evidence is insufficient to support the jury's damages award. Nor does it argue that the damages awarded by the jury are so excessive so as to violate the Due Process Clause of the Fifth or Fourteenth Amendments to the United States Constitution. Rather, Antilles School argues that the award shocks the judicial conscience, and that this Court, after weighing the evidence, should order the verdict reduced.[22] Because this is precisely the type of judicial factfinding and weighing of the evidence that we desire to prevent by declining to recognize remittitur, we reject Antilles School's claim, and affirm the damages award, as modified by the comparative fault 20 percent reduction.

### III. CONCLUSION

Because Lembach introduced sufficient evidence of a breach of duty and causation, the evidence was sufficient to sustain the jury's verdict. Although the Superior Court erred by separately instructing the jury on negligence and premises liability, the error is both harmless and invited, given Antilles School's representation to the Superior Court that the elements of negligence and premises liability are the same and its request that the Superior Court utilize a verdict form with only a single liability question. And while the Superior Court committed several errors with regard to Mackay's expert testimony, these errors benefited Antilles School, and thus cannot form the basis for a new trial.[23] Finally, we

---

[22] For example, to justify its claim that the jury's award was excessive, Antilles School contends that this Court should consider that Lembach "quickly received emergency care," (Appellant's Br. 46), effectively requesting that we give greater weight to that fact other than testimony establishing that Lembach had suffered traumatic injury to the spine, was going in and out of consciousness, and was in a tremendous amount of pain while awaiting medical attention.

[23] It is well established that, under the "right result, wrong reason" doctrine, where the record otherwise supports the trial court's judgment, an appellate court may affirm that judgment for reasons other than those relied upon by the trial court, even if the trial court's reasons are erroneous. *Hamdallah v. Warlick*, 935 F. Supp. 628, 631, 35 V.I. 124 (D.V.I. 1996) ("An

decline to adopt the common-law doctrine of remittitur, and thus refuse to accept Antilles School's invitation to reduce the jury's damages award based on our own weighing of the evidence. Accordingly, we affirm the Superior Court's May 12, 2015 judgment.

.

---

appellate court may affirm a result reached by a trial judge on different grounds so long as the record supports the judgment." (citing *Deary v. Gov't of the V.I.*, 746 F.2d 185, 188 (3d Cir. 1984))); *see also United States v. Dorsey*, 45 F.3d 809, 814 (4th Cir. 1995) (an appellate court can affirm a trial court's opinion on different grounds than those employed by the trial court); *Horsey v. Mack Trucks, Inc.*, 882 F.2d 844, 847 (3d Cir. 1989) (same); *PAAC v. Rizzo*, 502 F.2d 306, 308 n.1 (3d Cir. 1974) (same); *Schultz v. Schultz*, 51 Va. (10 Gratt.) 358, 384 (1853) ("[I]t is the settled rule that how[ever] erroneous . . . may be the reasons of the [trial] court for its judgment upon the face of the judgment itself, if the judgment be right, it will not be disturbed [on appeal] on account of the reasons.").